JAMES WALTER CHRYSTAL, an Infant by Guardian, etc., Respondent, *v.* THE TROY AND BOSTON RAILROAD COMPANY, Appellant.

To charge a railroad corporation in an action for negligence, it is not sufficient to prove a negligent act on its part; it must be made to appear that the injury complained of was sustained by reason of such act.

Plaintiff, an infant about seventeen months old, escaped from his mother's house near a railroad crossing by crawling under a gate which was fastened, went upon the track, was struck by a train and injured. In an action to recover damages for the injury, it appeared that the bell on the locomotive was not rung or the whistle sounded eighty rods from the crossing as required by the statute. There was no evidence authorizing a finding that had the statute relating to signals at railroad crossings been complied with, the mother's attention would have been called in time to have enabled her to rescue the child, or that the injury might otherwise have been prevented. *Held*, that the testimony did not authorize a recovery.

Reported on former appeal, 105 N. Y. 164.

*Chrystal* v. *T. & B. R. R. Co.* (52 Hun, 55), reversed.

(Argued March 10, 1891; decided April 7, 1891.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made March 16, 1889, which affirmed a judgment in favor of plaintiff entered upon a verdict and an order denying a motion for a new trial.

This was an action to recover damages for injuries to plaintiff, alleged to have been caused by the negligence of defendant.

The facts, so far as material, are stated in the opinion.

*John H. Peck* for appellant. The statement of the mother is so wholly incredible in its nature as not to be sufficient in law to be submitted to a jury. (*Chrystal* v. *T. & B. R. R. Co.*, 105 N. Y. 164, 171; *Hartfield* v. *Roper*, 21 Wend. 615.) The omission of a signal bell or whistle as required by statute was not the reason for the damage sustained. (3 R. S. 643, § 7; Laws of 1886, chap. 593, § 1; *Johnson* v. *H. R. R. R. Co.*, 20 N. Y. 66–73; *Cosgrove* v. *N. Y. C. R. R. Co.*, 13 Hun, 329; *Barringer* v. *N. Y. C. R. R. Co.*, 18 id. 398; *Sutton* v. *N. Y. C. R. R. Co.*, 66 id. 243; *Van Raden* v. *N. Y., N. H. & H. R. R. Co.*, 56 id. 96; *Read* v. *Nichols*, 118 N. Y. 224; *Ryan* v. *N. Y. C. & H. R. R. R. Co.*, 35 id. 210; *Harty* v. *N. J. C. R. Co.*, 43 id. 468.) The plaintiff must establish the fact and not merely afford ground for conjecture as to the reason for the damage. (*Searles* v. *M. R. Co.*, 101 N. Y. 661; *Malone* v. *B. & A. R. R. Co.*, 51 Hun, 532; *Ring* v. *City of Cohoes*, 77 N. Y. 90; *McCaffrey* v. *T. T. S. R. Co.*, 47 Hun, 404.) The defendant's counsel requested the court to charge that all the engineer was bound to do after the discovery of the danger was to use reasonable diligence to avoid it. The court refused to so charge the jury, but left it to them as a question of fact. This was error. (105 N. Y. 164.)

*R. A. Parmenter* for respondent. On the present appeal to this court, the former judgment as to the freedom from negligence of the mother of the plaintiff is *res adjudicata*. As

to that question no new evidence was offered by the defendant on the last trial. (*Rice* v. *King*, 7 Johns. 20; *Haskin* v. *Mayor, etc.*, 11 Hun, 436; *Mc Williams* v. *Morrill*, 23 id. 162; *Smith* v. *Smith*, 79 N. Y. 634; *Perry* v. *Dickerson*, 85 id. 345; *Millard* v. *M., K. & T. R. R. Co.*, 86 id. 441; *Palmer* v. *Hussey*, 87 N. B. 303; 3 Abb. N. Y. Dig. 452; *Brown* v. *Mayor, etc.*, 66 N. Y. 390; *Newton* v. *Hook*, 48 id. 676; *Gales* v. *Preston*, 41 id. 113; *Lahr* v. *M. E. R. Co.*, 104 id. 287.) Upon the evidence produced on the last trial, the ques- tion touching the negligence of the defendant and its employes in charge of the train was plainly one of fact for the jury. (*Dyer* v. *E. R. R. Co.*, 71 N. Y. 228; *Voak* v. *N. C. R. R. Co.*, 75 id. 320; *Casey* v. *N. Y. C. & H. R. R. R. Co.*, 78 id. 518, 524; *Greany* v. *L. S. R. R. Co.*, 101 id. 419; *Sherry* v. *N. Y. C. & H. R. R. R. Co.*, 104 id. 852; *Thompson* v. *N. Y. C. & H. R. R. R. Co.*, 110 id. 637; *Jones* v. *U. & B. R. R. R. Co.*, 36 Hun, 119.) The court will take judicial notice that a child only seventeen months old, who has been able to walk for about two months, is *non sui juris.* Therefore, negligence will not be predicated upon his own conduct. (*Pendergast* v. *N. Y. C. & H. R. R. R. Co.*, 58 N. Y. 652; *Casey* v. *N. Y. C. & H. R. R. R. Co.*, 6 Abb. [N. C.] 104; *Ihl* v. *F. S. & G. S. F. R. R. Co.*, 47 N. Y. 317.) The negligence of the parent, whether or not imputable to a child *non sui juris*, is ordinarily a question of fact for the jury. (*Magnum* v. *B. C. R. R. Co.*, 36 Barb. 237, 239, 241; 38 N. Y. 455, 457, 459, 461; *Fallon* v. *C. P. F. & E. R. R. R. Co.*, 64 id. 17; *McGarry* v. *Loomis*, 63 id. 107; *Smedis* v. *B. & R. R. R. Co.*, 88 id. 13; *Kellogg* v. *N. Y. C. & H. R. R. R. Co.*, 79 id. 73; *Stackus* v. *N. Y. C. & H. R. R. R. Co.*, Id. 467; *Shaw* v. *Jewett*, Id. 616; *Mas- soth* v. *D. & H. C. Co.*, 64 id. 529; *Archer* v. *N. Y. C. & H. R. R. R. Co.*, 106 id. 601.) The defendant's motion for a nonsuit at the close of the plaintiff's evidence and renewed upon the whole testimony was properly denied. (*Flack* v. *Vil. of Green Island*, 23 Wkly. Dig. 534; *City of Cohoes* v. *Morrison*, 42 Hun, 219, 220.) The exception to the charge as requested by the plaintiff's counsel, as to the statutory sig-

nals and the omission to observe them, was not well taken.
(*Barker* v. *Savage*, 45 N. Y. 194; *Murphy* v. *Orr*, 96 id. 17.)
The defendant's motion to set aside the verdict and for a new
trial on the ground that the damages awarded are excessive,
was properly denied. (*Kiff* v. *Youmans*, 20 Hun, 123; *Sloan*
v. *N. Y. C. & H. R. R. R. Co.*, 1 id. 540; *Cragin* v. *B. C.
R. R. Co.*, 18 id. 368; *Minick* v. *City of Troy*, 19 id. 253.)

PARKER, J.   On the 4th day of September, 1877, the plain-
tiff, then seventeen months old, while unattended on defend-
ant's track at the Cary avenue crossing in Hoosick Falls, was
so injured by a passing locomotive as to require the amputa-
tion of a leg, and a finger of the left hand.

On a former review (105 N. Y. 164) it was determined:

1. That this court could not interfere with the finding of
the jury that the plaintiff's mother was free from negligence
contributing to the injury.

2. That the evidence did not authorize the jury to find that
the engineer omitted to use reasonable care and diligence to
avert the accident.

It appearing that as soon as he saw the child upon the cross-
ing, he gave the signal for the brakes to be applied, and
reversed his engine, doing everything that could be done to
arrest the speed of the train, which he succeeded in stopping
after the two small wheels of the engine had passed over the
plaintiff's leg, and the judgment was reversed because there
was no evidence of negligence on the part of the defendant.

The record before us contains all the evidence then under
review, and in addition some testimony tending to show that
the bell on the locomotive was not rung or the whistle sounded
eighty rods from the crossing.   The questions presented by
the record are, therefore, *res adjudicata*, except in so far as
the evidence relating to the failure to sound the whistle or
ring the bell as commanded by statute may present others.
The jury have found the fact to be that the defendant did not
announce that the train was approaching the crossing by mak-
ing such a signal as the statute requires.   The General Term

have approved their finding.  As it has support in evidence it is now controlling.  But proof of defendant's negligent act could not alone charge it with liability.  It was one step in that direction, but there remained another which required that it be made to appear that the injury was sustained "by reason of such neglect."  And the question is presented whether there was any evidence on which to found such a finding. A finding in effect that the boy would not have been harmed had the defendant given the proper signals.  If it had they would not have served as a warning to the plaintiff, then a nursing baby learning to walk, who tottered along clapping his hands as the engine moved towards him, for he would not have understood them.  But it is said that he was entitled to have this bell rung so that his mother, whose duty it was to care for and protect him, would have been apprised of the approach of the train and his danger in time to have saved him from harm.  While the object of the statute was to afford the best protection possible to travelers on the public highway compelled in the progress of their journey to cross railroads at grade its provisions are sufficiently comprehensive to include a case like this, if it be true that, had the signals been given, the accident would not have happened.  Such a case may readily be supposed.  If it should appear that while a mother was within a short distance of a railroad crossing, but detained briefly by a passing acquaintance, her child was injured by a locomotive from which no signal was given as it approached the crossing ; and further that she was conscious of the presence of her child in the vicinity, and the danger to which moving trains would expose it ; was so near to it that she had time to and would have rescued it had a signal been given while the train was eighty rods from the crossing, a jury would be authorized to find that but for such neglect the injury would not have happened.

Here the facts are very different.  The house in which they lived stood back from the street line about twelve feet on which was a high fence containing a gate, which according to the mother's testimony was then closed and fastened.  Between

the bottom of the gate and the ground was a space from six to eight inches in width. After nursing the infant the mother finding it was inclined to sleep laid it on the floor, and after placing a wooden chair across the outer doorway, stepped into a room opposite to arrange its cradle, and the child remaining quiet she " delayed " to arrange the room. Returning eight or ten minutes later she discovered the child was gone, and then she " leapt over the chair or took it up," and ran to the garden back of the house where potatoes and weeds were growing with stalks as high as the child, but did not see him. Then she started back to see if he had fallen into the cistern, and looked in. At that moment she heard the alarm whistle of a locomotive, and looking up, she saw a train nearer the crossing than Eldridge's, a point 452 feet distant. She ran around the house through the garden to the gate which she found closed and fastened with a string, as she had previously tied it. Looking down the avenue she saw the baby and ran to its rescue, but did not reach it in time. These facts in no wise suggest that the mother would have heard the bell had it been rung or if she did would have paid any attention to it, for had she not fastened the gate with a string which the baby could not untie, and placed a chair in the doorway to prevent his getting out? More than one hundred trains a day passed by, and hence the precaution which she described. These, with the added fact that the baby was asleep, not only seem to excuse her absence from the room, but unmistakably indicate that she did not feel any occasion to fear moving trains or heed the ringing of locomotive bells which merely indicated such passing. It does not appear that when she missed the child she would have gone directly to the railroad track had a bell been ringing, or if she had, that she would have been in time. Her fears were not in the direction of the railroad, doubtless because of the secure manner in which the gate was fastened, for had they been, with trains passing frequently and irregularly, she would have hastened to the track before exploring the garden and cistern. When her hurried search had proven unavailing, the usual

danger signal attracted her attention, but she was then too late, and whether the bell was ringing or not at that moment could not have made any difference in the result. In the analysis which we have briefly made of the testimony describing the situation and her conduct, no opportunity is presented for a finding that had a signal been given eighty rods from the crossing, the accident would have been avoided. Nor does she by testimony assert to the contrary. With reference to the omission to ring the bell, and its effect on her conduct, she testified on the direct examination: "That she heard the whistle; that it made two short toots. Q. Was there any bell rung? A. No, sir; I didn't hear any. Q. You could have heard one if there had been one? A. Yes, sir; I could have heard the bell coming." On her cross-examination she said: "I ran to the fence, and looking down the track saw the child; he was standing up before the accident. Q. You did not pay much attention to the bell? A. I could have heard it; I didn't hear it; I could hear it if it had rung. Q. Were you paying any attention to the bell, or were you looking for your child? A. I was paying attention, and, of course, I looked for my child; but when the whistle blowed I went to the train; if the bell was ringing I would have heard the bell before the whistle blew. Q. I want to know whether you paid any attention as to whether it was ringing or not. A. Why, I didn't hear the bell. Q. Did you listen for it? A. No, sir. Q. Did you pay any particular attention whether it was rung? A. No, sir; because I didn't hear the bell at all." Now, it will be observed that in only one answer does she assert that if the bell had been ringing she would have heard it before the alarm whistle sounded, which was clearly too late, as the result shows. In that answer she does not say how long before she could have heard it. She does not assert that had it rung she could have heard it in time to have saved the child from injury, or if such were the case, that in view of the situation her attention would have been attracted in the direction of the railroad rather than the garden and the cistern which she first visited. While her evidence indicates that she

was quite positive that the bell did not ring, it fails to suggest that she even entertained the thought that if the bell had been rung, the result would have been otherwise. It seems to be clear, therefore, that the evidence did not authorize a finding that had the statute relating to signals at railroad crossings been complied with, the mother would have rescued the child from danger. No other way is suggested in which the ringing could have been made available for the protection of the plaintiff.

It follows that the damages sustained were not occasioned by reason of the defendant's omission to give a signal eighty rods from the crossing. The exception to the ruling of the court on the motion for a nonsuit was well taken.

The judgment should be reversed.

All concur, except BRADLEY, J., not voting.

Judgment reversed.