Mary Harty, Administratrix, &c., of Philip Harty, deceased, Appellant, *v.* The Central Railroad Company of New Jersey, Respondent.

A statute (of the State of New Jersey) requiring every railroad company to cause a bell to be rung, or whistle blown, for a specified distance, upon locomotives approaching the point where a highway crosses its track upon the same level, and to erect and maintain warning signals at such point, inscribed "so as to be easily seen by travelers," imposes no duty toward a person walking upon its track within that distance, but not at the crossing or in the highway; and its neglect to give such warnings is not, of itself, negligence toward such a person.

Although the duty of railroad corporations, as to giving warnings, is not limited to the measures required by such a law, and they are bound to use ordinary precautions and diligence to avoid collisions and to warn persons walking upon their track of approaching danger, yet, when a person suddenly steps in front of a moving train, and so near to the engine that no warning or effort would avail to save him, they are not chargeable with negligence, as to him, although they failed to give the signals which the law has required for the protection of travelers upon the highway which the train is approaching.

This being so, it is gross negligence in the person injured to step upon the track, without using the precaution of looking out for an approaching train, although his attention might have been called to it if the signals required by the law had been given.

(Submitted April 1st, 1870; decided June 24th, 1870.)

Appeal from a judgment of the General Term of the Supreme Court, in the second judicial district, reversing judgment entered upon a verdict for the plaintiff, and granting a new trial.

This action was commenced to recover damages for negligently causing the death of plaintiff's husband. The following are the material facts: The defendant is a New Jersey corporation. There was a law in that State providing that, whenever the death of a person shall be caused by the wrongful act, neglect or default of any person or corporation, the personal representatives of the deceased shall have an action for damages. There were also laws in that State pro-

viding that every railroad company shall cause a board, with this inscription, "look out for the locomotive," to be erected and maintained, wherever any public highway shall cross such railroad upon the same level with the railroad, "so as to be easily seen by travelers;" and providing that every railroad company shall keep a bell or steam whistle upon every engine, and cause the bell to be rung or the steam whistle to be blown "at the distance of at least three hundred yards from the place where any such railroad crosses a turnpike road, or highway, upon the same level with the said railroad; and such bell shall be kept ringing, or such steam whistle shall continue to be blown, until the engine has crossed such turnpike or highway, or has stopped." And penalties are imposed upon railroad companies not complying with these provisions.

The intestate was struck by one of defendant's engines and fatally injured, at a point about 200 feet east from a road crossing. The railroad runs easterly and westerly, and the highway crosses it northerly and southerly. The train was going westerly. There were three parallel tracks. Upon the south track there were two gravel trains standing still, one just east of the crossing, and one partly across and west of it. There was a train coming from the west upon the middle track, which, at the time of the accident, had reached a point 1,500 feet west of the crossing, and the whistle upon the engine of that train was blowing. The intestate had for three months lived within a quarter of a mile of the crossing, and in sight of the railroad. He worked in a slaughter-house near the railroad, and about a quarter of a mile east of the crossing. He and many other persons working in the slaughter-house had been in the habit daily of going to and from the slaughter-house, passing over the railroad to and from the crossing. On the day of the accident, about four o'clock, he started from the slaughter-house to go home, passing upon the railroad. He was passing along west, upon the middle track, and it is supposed that he either saw the train coming east upon the same track or heard its whistle, and stepped from

that track upon the north track, and just as he did so, he was struck by the train going west upon the north track. That was a passenger train running upon time, at the rate of about sixteen miles an hour. The train had been in plain sight for about 2,300 feet before it struck him, and the railroad track for at least 1,700 feet west of that point was also in plain sight. The track east and west of the point where the accident occurred passed over what was called the salt meadows, where trains passed without making as much noise as trains usually do. The north track was the one used by trains going west, and the middle track by the regular trains going east. There was clear space of several feet between these two tracks, so that if the deceased had remained between the tracks he would have been entirely safe. After the eastward bound train came in sight, there was time for the deceased to have passed over to the north side of the north track before the westward bound train could reach him. The train going west was so near the deceased, when he stepped upon the north track, that the accident could not be avoided by those who had charge of that train. The bell upon the train was not rung and the whistle was not blown, and there was no signboard at the road crossing, as required by the law.

The law, as laid down by the presiding judge at the circuit, was substantially this: That the defendant was chargeable with negligence, because the bell was not rung, nor the whistle sounded; and that the plaintiff was, therefore, entitled to recover, if the intestate was lawfully upon the railroad, and his own negligence did not contribute to the accident.

The jury rendered a verdict for the plaintiff. The judgment entered upon this verdict was reversed at General Term, in the second district, and the plaintiff has appealed to this court.

*John K Porter*, for the appellant, on the question of the defendant's negligence, cited *Thomas* v. *Winchester* (2 Seld., 397); *Smith* v. *N. Y. & Har. R. R. Co.* (19 N. Y., 131). That the question of negligence, on the part of the intestate,

was a question for the jury, he cited *Ernst* v. *Huds. R. R. Co.* (39 N. Y., 68); *Wolfkiel* v. *Sixth Av. R. Co.* (38 N. Y., 51); *McIntyre* v. *N. Y. C. R. Co.* (37 N. Y., 288); *Cook* v. *N. Y. C. R. Co.* (3 Keyes, 479); *Mackey* v. *N. Y. C. R. Co.* (35 N. Y., 80); *Ernst* v. *Huds. R. R. Co.* (35 N. Y., 47); *Keller* v. *N. Y. C. R. Co.* (24 How., 172); *Johnson* v. *H. R. R. Co.* (20 N. Y., 71); *Ireland* v. *Oswego, &c., Co.* (13 N. Y., 533); *Bernhard* v. *Renss. & Sar. R. Co.* (23 How., 169); *Jetter* v. *Harlem R. Co.* (2 Keyes, 154).

*John C. Dimmick*, for the respondent, as to negligence on the part of the intestate, cited *Beisiegel* v. *N. Y. C. R. Co.* (40 N. Y., 9); *Wilcox* v. *Rome W. & O. R. Co.* (39 N. Y., 358); *Gonzales* v. *N. Y. & Har. R. Co.* (38 N. Y., 440).

EARL, Ch. J.    I shall assume that the intestate was lawfully upon the railroad at the time of the accident.    There was sufficient evidence to authorize a jury to find an implied license, to all the persons working at the slaughter-house, to go upon the railroad, between the highway crossing and the slaughter-house.    But, I think, the plaintiff should have been defeated at the circuit, both because he failed to show any negligence on the part of the defendant, and because the negligence of the intestate contributed to the accident.    The only negligence alleged against the defendant was, that its servants upon the engine did not ring the bell, nor blow the whistle, as required by the New Jersey law.    The sole object of this law, it seems to me, was to protect persons traveling upon the highway, at or near the crossing.    In the language of ALLEN, J., in the *People* v. *New York Central Railroad Co.* (25 Barb., 199), in reference to a similar law of this State, " the hazards to be provided against were twofold:  1st. The danger of actual collision at the crossing; and, 2d. That of damage by the frightening of teams traveling upon the public highway," near the crossing.    For the protection of such persons, railroads were required to put up the signboard at the crossing, and to ring the bell or blow the whistle.    The signboard

was to be put up "so as to be easily seen by travelers," and none of these precautions were required, except where the railroad and highway crossed each other *upon the same level;* thus showing clearly that the law makers had in mind only the danger to travelers upon the highways by collisions at the crossing. Railroad companies were not required by this law to ring the bell nor sound the whistle when the highway passed along the railroad, nor when it passed at an elevation over it, or under it; nor were they required to take these precautions for the protection of persons walking along upon the railroad. I conclude, therefore, that the intestate was not within the protection of this law, and that the railroad company owed him no duty, under the law, to ring the bell or sound the whistle. But the duty of railroads, as to giving alarms by bell and whistle, is not limited to the measures imposed by this law. They are bound to use at least ordinary prudence and diligence to avoid collisions with persons lawfully crossing their tracks; and hence, at road crossings and in the streets of villages and cities, in the absence of any statute law, they would be required to use these ordinary precautions to avoid accidents, and if they omitted them, they would be liable to persons injured without their own fault by collisions. If the intestate had been walking along upon the north track, and the persons in charge of the engine had seen him in time, it would have been their duty to have rung the bell or blown the whistle so as to have warned him of danger. But he had been walking about 400 feet upon one of the other tracks, and the men in charge of the engine, if they saw him, had no reason to suppose that he would needlessly and heedlessly go upon the north track, immediately in front of the engine; and, when he did do so, it was too late to warn him of danger. If this company was bound to give these warnings to this man, then every railroad company is bound to do so to every person who may be upon the railroad ahead of a train, although he is not on the track and not in a place of danger. I think it would be unreasonable to carry the precautionary obligations of railroad companies to such an extent;

and I therefore hold, that this railroad company was guilty, as to the intestate, of no negligence in not ringing the bell or blowing the whistle, under the circumstances disclosed in this case.

II. I also reach the conclusion, that the intestate was guilty of negligence contributing to the accident. We may rightfully assume that the intestate was familiar with this railroad, as he lived and worked in sight of it for three months and daily passed over it between the crossing and the slaughter house, and that he knew that the trains made but little noise in passing over these salt meadows, and that the north track was the one used by westward bound trains. This train was upon time, going at a slow rate of speed. There was nothing to obstruct his view. All he had to do before he passed upon the north track was to look, and the neglect of this ordinary precaution cost him his life. It was not necessary for him to go upon the north track to avoid collision with the eastward bound train. He could have gone between the tracks. Instead of doing this, he needlessly and thoughtlessly went upon the north track with his back toward the coming train. When he was upon the railroad track, he knew he was in a place of danger and that he might be killed; and hence it was his duty to use his eyes and ears, and to take at least ordinary precautions to save his life. Not having done this, I believe it is now well settled that no damages can be recovered on account of his death.

*Chicago, &c., Railroad Co.* v. *Hill* (19 Ill., 499); *Warren* v. *Fitchburgh R. R. Co.* (8 Allen, 227); *North Penn. R. R. Co.* (49 Penn., 60); *Stubley* v. *L. & N. W. Railway Co.* (1 Law R. Ex., 13); *Beisiegel* v. *N. Y. C. R. R. Co.* (34 N. Y., 622); S. C. 40 N. Y., 79; *Gonzales* v. *N. Y. & H. R. R. Co.* (38 N. Y., 440); *Ernst* v. *Hudson River R. R. Co.* (39 N. Y., 61); *Wilcox* v. *The Rome W. & O. R. R. Co.* (39 N. Y., 358); *Griffin* v. *N. Y. C. R. R. Co.* (40 N. Y., 34).

The order of the General Term should be affirmed, and judgment absolute ordered against the plaintiff.

All for affirmance, except Hunt and Sutherland, JJ.

Judgment affirmed and judgment absolute for the defendant.