No. 1,413.

# CLEVELAND, CINCINNATI, CHICAGO AND ST. LOUIS RAILROAD COMPANY *v.* MARTIN, ADMR.

MASTER AND SERVANT.—*When Relation Exists.*—*So Brief Interval for Dinner that Servant Cannot Leave Premises.*—*Invitation.*— *Railroad.*—Where so brief an interval (thirty minutes) is allowed an employe (a section hand) in which to eat his dinner that he cannot leave the premises of his employer for that purpose, his act in eating his dinner on the premises is an incident to the service; and the mere fact that the employe was not at work as a section hand at the moment he was injured is not conclusive that the relation of master and servant did not then exist. Under the circumstances, there was an implied invitation by the railroad company to the employe to eat his dinner on the premises.

SAME.—*Brief Interval for Dinner.*—*When Relation of Master and Servant Continues During Such Interval.*—Under the circumstances, the relation of master and servant and the duties incident to such relation continue during the interval for dinner.

SAME.—*Duty of Master to Keep Premises Safe.*—The rule is, in such case, that it is the duty of the master to keep in a reasonably safe condition, having in view the nature and character of the business, all the machinery and appliances used in and about the premises where the employes, in the performance of their services and matters incident thereto, would naturally and ordinarily be likely to go.

SAME.—*Eating Dinner on Premises.*—*Invitation.*—*Going to Another Part of Premises to Pump House.*—In such case it is not necessary to show that the employe remained on the premises to eat his dinner by invitation of the master, for the reason that the right to remain grows out of the relation of master and servant, which continues during such cessation from actual labor. But where a servant goes to another part of the premises—to a pump house near where he was working, as was the custom with him and his co-employes, the weather being cold and blustery—for the purpose of eating his dinner, and while so doing is injured by a defective boiler, it is incumbent upon him to show an invitation, express or implied, by the master to go to such other place.

SAME.—*Incident to Service.*—*Servant Eating Dinner on Premises.*— *Invitation, Ultimate Fact, Special Verdict.*—*Recovery.*—It was not necessarily an incident to the employe's service as section hand,

that he should eat his dinner in the pump house in that vicinity, and before the servant can recover from the railroad company for an injury sustained there, the ultimate fact, where there is a special verdict, that the decedent was in the pump house in the line of his duty by invitation of the company, must be found.

From the Fountain Circuit Court.

*J. T. Dye*, *B. K. Elliott*, *W. F. Elliott* and *C. M. McCabe*, for appellant.

*D. W. Simms* and *L. Nebeker*, for appellee.

DAVIS, J.—Since the rehearing was granted, the case has been fully and ably presented to the court on oral argument. Great diligence and research have also been shown by the learned counsel in the exhaustive briefs filed for our consideration. We have given the many questions discussed careful consideration, and are of the opinion that the decision of the case turns on the question whether the special verdict shows that the decedent was in the pump house in the line of his duty by implied invitation of the appellant at the time he was injured.

It is alleged in the complaint, in substance, that the decedent was in the employ of the appellant as a section hand engaged in the repair of the road bed and tracks, and that while engaged in that service and in the line of his duty, he was by invitation of the appellant, eating his dinner in the pump house, where he was injured through the negligence of the appellant by reason of the explosion of a defective boiler. The complaint clearly proceeds upon the theory that he was injured while eating his dinner in the pump house. It clearly appears that he was not engaged in the actual work of repairing the road bed and tracks at the time he was injured. The controlling question the court is required to determine is whether, under the circumstances, eating his dinner on the premises where he was at work is

shown to have been an incident to the service of the decedent, and whether there was an invitation, express or implied, by appellant, to him to go into the pump house on the line of its railway near the place where he was engaged in such work, for the purpose of eating his dinner therein. With these preliminary observations we will proceed to the consideration of the special verdict and the question arising thereon under the issues.

The first specification of the special verdict states that the appellant owned and operated a line of railway through the town of Covington, on the 17th day of February, 1893, and that it is the owner of a pump house on the line of its railway. The other specifications of the special verdict, omitting the formal parts and the conclusion, read as follows: "(2) That at, and for a long time prior to said date, the defendant pumped water at said pump house into its water tank, and kept in said pump house a steam engine and boiler, whereby it furnished the power for pumping said water. (3) That said pump house was a small building situated about thirty (30) feet south of the main track of defendant's road, and about thirty (30) feet distant from the west end of defendant's depot, at said city, and was in plain sight at all times of said main track, and of trains passing thereon, and in plain sight of the platform at the west end of said depot. (4) That said boiler was an upright boiler, about three feet in diameter, and consisted of an inclosed cylinder of boiler iron, with a perpendicular cylinder inside thereof, said boiler being heated by fire kept and maintained in said inside cylinder; that said boiler was kept about the center of said building, so as to leave a considerable space on all sides of it, and there was in said building also a vacuum pump, and there was also kept in said building a bench. (5) That the intestate, William Manifee, entered into the employ of the de-

fendant in the fall of 1892 as a section hand on the defendant's line of railway, upon a section thereof known as section thirteen (13), extending from a point four miles east of said city of Covington to a point about two miles west of said city, and was placed by the defendant, along with three or four other men similarly employed, under the charge and control of the section boss or foreman, and subject to his orders and directions, and it became his duty to work, at the times and places indicated by such section boss or foreman, upon and along the line of said section 13, and upon the side tracks and yards of said defendant at said city of Covington, and to unload coal for the supply of the depot and pump house at said city, and to unload sand to be dried in said pump house, and continued in such labor and employment until the time of receiving the fatal injury hereinafter stated. (6) That in the winter of 1889, and ever since, up to and including the 17th day of February, 1893, the defendant has permitted its section men working on said section to eat their dinner in said pump house whenever the weather was inclement, and during all such times it has been the habit and custom of such section men to use said pump house for said purpose whenever they worked near enough thereto to avail themselves of its warmth and comfort, provided that the condition of the weather required them to retreat to a warm and sheltered place for such purpose, all of which was done with the consent of the defendant, and without any objection whatever on the part of the defendant, and by authority of their section foreman, and with the express consent, license and invitation of the person placed by the defendant in charge of said pump house, and that during all said time the section foreman of said section had authority to and did employ and discharge the section hands upon said section of said railroad for

and on behalf of the defendant. (7) That at the time aforesaid it was necessary for the section hands upon said section to devote a considerable portion of their time at work upon the side tracks at said city of Covington, and upon the main track at and near to said city, and it was convenient for said section hands during a large portion of the time to eat their dinner on defendant's premises at said city. (8) That said railroad, during said time, was so located with reference to the city of Covington, and with reference to the homes of the employes upon said section, that said section hands could not go to their homes to eat their dinners during the time that was allowed them for the purpose of eating dinner, and that in the winter time the defendant only allowed the section hands an interval of half an hour in their labor for dinner, which time so allowed was too short to enable such section hands to leave the defendant's premises for warmth or shelter and to eat their dinners; and, on account of the shortness of the time so allowed, such employes were compelled to eat their dinners upon the defendant's premises, and it was necessary for such employes to bring their dinners with them when they came to work in the morning, and it was their custom to so do. (9) That there was not, during any of said time, on or convenient to the defendant's premises, any place sufficiently comfortable, and at the same time suitable, in which the said section hands could eat their dinner in cold or inclement weather, except the said pump house, the only other comfortable place for such purpose being the waiting room of the defendant's depot, which was unsuitable, for the reason that there was but one waiting room belonging to such depot, and because a passenger train stopped at said station a few minutes after noon, and that said pump house was a suitable, comfortable and appropriate place for the pur-

pose aforesaid; that said February 17, 1893, was a cold, blustery and stormy day, and was a day unfit for persons to eat dinner away from fire and shelter. (10) That on the 17th day of February, 1893, the said William Manifee, being engaged as a section hand in the employment and service of said defendant, and upon said section 13, at about the hour of twelve o'clock noon, went, with the section boss of said section, and with the other hands working on said section, into the said pump house of the defendant, according to the custom aforesaid, and upon the express invitation of the person whom the defendant had in charge and control of said pump house, for the purpose of eating dinner, which dinner he and said other section hands, and said section foreman, had brought with them from their several homes; and while the said William Manifee was eating his dinner in said pump house upon said bench, and while said boiler was being operated at a high pressure of steam, a metal plug was suddenly blown out of said boiler, and an enormous amount of steam immediately filled said pump house, and scalded the said William Manifee, so that the flesh of the upper part of his body was cooked, and the said William Manifee was thereby fatally injured, and all without fault or negligence upon his part, and without chance, time or opportunity for him to escape therefrom, from which injury the said William Manifee died within the space of four hours thereafter. (11) That the injury aforesaid, and the death of the said William Manifee so resulting therefrom, were caused solely by the carelessness and negligence of the defendant, in this: that at the time of said injury the defendant used and had in operation in said pump house the upright boiler aforesaid, which was then and for a long time prior thereto had been defective, weak and dangerous, the said boiler having been constructed with

four holes near the bottom thereof, said holes being about two inches in diameter, and made through the outside wall of said boiler, which outside wall was about three-eighths of an inch in thickness, which holes had been stopped by screwing metal plugs into said holes, and into threads that were cut into the boiler iron through which said holes were made, said plugs not being in any otherwise secured, said boiler having been in use for a long time, and said holes having been frequently opened by unscrewing said plugs therefrom, and closed again by screwing said plugs back into said holes, such threads being too fine to hold said plugs securely against the pressure of steam generated upon the inside of said boiler, and the thickness of iron around said holes being insufficient to allow a sufficient number and amount of threads to hold said plugs securely; and the said threads upon the said plug which was blown out as aforesaid, and the threads in the hole into which said plug was screwed, having become worn out by the frequent opening and unscrewing thereof and screwing the same back, and by the rust and decay, until said plug and said hole in said boiler had been a long time prior to said explosion and accident insufficient, insecure and unsafe, and extremely dangerous, of which unsafe, insecure and dangerous condition of said boiler, and said hole, and said plug, the defendant received actual notice, and had actual knowledge, which notice was received by and through Calvin Gingrich, who for several months prior to the injury was the pump repairer of the defendant, and it was part of his duty to inspect the boilers in the pump houses on the defendant's road, and to keep the same in repair, which notice and knowledge was received at least two weeks prior to said injury; but, notwithstanding said knowledge so received by the defendant, it negligently continued to use said

boiler, and to run the same in the usual manner, and negligently failed to replace said boiler with a good and sufficient boiler, and negligently failed to replace said plug, or to repair said plug, hole, or boiler, in any manner, except by wrapping said plug with hemp and white lead, which repair was wholly ineffectual and insufficient, and was not calculated to render such plug, hole and boiler safe or secure, nor to add in any way to the security thereof. That such repairs, so made by the defendant, were carelessly and negligently done. That said defendant was guilty of carelessness and negligence in causing said boiler to be used and operated in said pump house during the two weeks prior to the death of the said William Manifee, and knew of its insufficiency as aforesaid, and of the insufficiency of said attempt to repair the same, and knew, during said two weeks, that said boiler was unsafe, dangerous and liable to explode at any time while being used and operated. That the negligent acts, omissions and conduct of the defendant, hereinbefore set out, caused the injury and death of the said William Manifee, and that the said William Manifee, at and prior to the said injury, was ignorant of the dangerous and defective condition of said boiler, and had no warning thereof." There are five other findings, which it is not necessary to set out.

Counsel for appellant insist that it was entitled to judgment for the following reasons: (1) That said William Manifee was a mere licensee, to whom appellant owed no other duty than that of doing him no willful injury; that he was in the pump house, not in the discharge of the duties of his service, but for his own convenience. (2) That appellant was under no legal duty to the intestate at the time he was injured; that he was not in his working place; that at the time the relation of master and servant did not exist. (3) That the con-

clusions in the special verdict add no force to it, and must be disregarded. (4) That the special verdict does not support the theory of the complaint, because there is no finding that the decedent was in the pump house by the direction or invitation of the appellant; that the section boss did not stand in the master's place, nor did the man in charge of the pump house, and they could not impose upon the appellant any duty, so that, even if they did invite the decedent into the pump house, they did no more than make him a licensee.

It may be conceded that the general rule is that after work hours the relation of master and servant does not exist, and the employe occupies the position of a stranger to the employer; and also that ordinarily, during the intervals of work for rest and refreshment, the employer owes no duty to the employe; but the question is whether these rules are applicable in cases where so brief an interval is allowed the employe in which to eat his dinner that he is required of necessity, in compliance with the rules and regulations of the employer, to remain on the premises for that purpose. It is also true that a person upon the premises of another by consent, permission or acquiescence is not necessarily there by invitation, either express or implied. If a person is on the premises of another by mere permissive privilege, he is a mere volunteer or bare licensee, and the owner owes him no duty to make the place safe, and the licensee, in going on there, assumes all the risks. It is the duty of the master to have the premises reasonably safe in all parts thereof where the employe is likely to go in the performance of the service and matters incident thereto. As to such places, the servant is on the premises by invitation, either express or implied. In this case it is clear that the decedent was, on the day in question, rightfully on the premises of appellant, while he was engaged in the per-

formance of the work assigned to him as a section hand. At the noon hour he was given, with other employes, a recess or intermission of thirty minutes for rest and refreshments. There was not sufficient time to go home for the purpose of eating his dinner. During the half hour allowed by appellant in which to eat his dinner, he rightfully remained on the premises. Ordinarily, eating dinner by an employe is not an incident to the service in which he is engaged for the employer, but in this case he was not given time to leave the premises for such purpose, and eating his dinner was a matter of necessity.

In this connection, it should be remembered, the finding shows that the interval of thirty minutes was allowed the employes for dinner. It is also found that the time so allowed the employes for that purpose was too short to enable them to leave the premises. There was, therefore, an implied invitation to said decedent by the appellant, under the circumstances, to eat his dinner on the premises. When, as in this case, so brief an interval is allowed the employe in which to eat his dinner that he cannot leave the premises of his employer for that purpose, his act in eating his dinner on the premises is an incident to the service. The mere fact that William Manifee was not under the circumstances at work as a section hand on the track of the railroad at the moment he was injured, is not conclusive that the relation of master and servant did not exist at the time.

In this connection we quote from the opinion of Judge Dailey, in *Pennsylvania Co.* v. *McCaffrey, Admx.*, 139 Ind. 430, as follows :

"The law of nature is inexorable in its demands. The cravings of hunger must be appeased. The laws of humanity declare that every man, fit to be a member of a train crew, must have three meals, some rest, and eight

hours' sleep a day. The appellee well says : 'Deprived of these requisites of intelligent life, a soldier becomes a coward; a workingman, a drone.' * * * Every statute and employer's rule is made in the presence of and subject to the laws of nature. Hunger, thirst, and sleep are imperative," etc. In this case it was "understood that the employes must of necessity " eat the dinner they brought with them on the premises during the brief interval allowed for that purpose. It would be unreasonable and unconscionable to hold that section hands on railroads, who of necessity and by universal custom in this country, carry their dinners with them when they go to work in the morning, in "tin buckets," are not on the premises, where they are engaged at work, during the brief time they are allowed at noon in which to eat their dinner, by invitation, implied if not expressed, of the employer.

It cannot be said we think, that an employe is not in the line of his duty when under such circumstances he remains on the premises of the master where he is engaged in his work during the brief interval allowed the employe by the employer for the purpose of enabling him to eat his dinner. *Parkinson Sugar Co.* v. *Riley*, 31 Pac. Rep. 1090 ; *Evansville, etc., R. R. Co.* v. *Maddux*, 134 Ind. 571. (See *Bennett* v. *Railroad Co.*, 102 U. S. 577; *McKone* v. *Michigan Cent. R. R. Co.*, 51 Mich. 601, 17 N. W. 74; *Jeffersonville, etc., R. R. Co.* v. *Riley, Admx.*, 39 Ind. 568; *Cleveland, etc., R. W. Co.* v. *Adair*, 12 Ind App. 569; and authorities there cited; *Pennsylvania Co.* v. *McCaffrey, Admx., supra; Indiana, etc., R. W. Co.* v. *Barnhart*, 115, Ind. 399 (16 N. E. 121). In the last case cited Judge Niblack says : "Where a person has a license to go upon the grounds or inclosure of another, he takes the premises as he finds them, and accepts whatever perils he incurs in the

use of such license. But when the owner or occupant, by enticement, allurement or inducement, whether express or implied, causes another to come upon his lands, he then assumes the obligation of providing for the safety and protection of the person so coming, and for any breach of duty in that respect such owner or occupant becomes liable for any injury which may result to the person so caused to come onto his lands. The enticement, allurement or inducement, as the case may be, must be the equivalent of an express or implied invitation. Mere acquiescence in the use of one's lands by another is not sufficient. Such an implied invitation may be inferred from some act or line of conduct, or from some designation or dedication." There may be permission by the owner, with "circumstances showing an invitation extended or an inducement, or, in the language of some of the cases, an allurement held out to him." *Bennett* v. *Railroad Co., supra.* In connection with the permissive use by appellant, do the circumstances of the case—the line of conduct of appellant—show such implied invitation?

In our opinion the general rule applicable in such case is that it is the duty of the master to keep in a reasonably safe condition, having in view the nature and character of the business, all the machinery and appliances used in and about the premises where the employes, in the performance of their services and matters incident thereto, would naturally and ordinarily be likely to go. An employe eating his dinner on the premises of the master where he is engaged in his work, under the circumstances of this case, is an act incident to his service. In the Maddox case, *supra*, the supreme court of this State recently held that the servant was not out of the line of his duty because he remained on the premises of the master during the noon hour. In this

C. C. C. & St. L. R. R. Co. *v.* Martin, Admr.

case it appears that it was necessary for the decedent to remain on the premises in order to be ready for the duty when the thirty minutes' intermission should expire. In the Riley case, *supra,* decided by the supreme court of Kansas, it appears that Riley, an employe of the sugar company, was required to carry stalks of cane from a pile and put them in the carrier. While discharging that duty at 4 A. M., in October, he became cold, and asked permission of the foreman in charge to go into the factory and warm himself. Permission was granted by the foreman, and while attempting to go into the door on the south side of the building he fell into the uncovered cistern containing the waste boiling water, and was scalded. The jury specially found that young Riley, at the time of his injury, was engaged in the line of his duty to his employer. The court, by Chief Justice Horton, says: "We think the evidence fully sustains the finding of the jury in this matter, because he was permitted by the foreman of the works to go into the factory for the purpose of warming himself. It was about 4 o'clock in the morning. Young Riley was cold. He was as much in the line of his employment when going to warm himself as he was going to the building taking his midnight meal, which he was accustomed to do, or if he had gone upon a call of nature to a water closet in the building."

As we have before observed, the act of the employes in eating their dinner on the premises of the master, where they are engaged at work, under such circumstances as are shown to have existed in this case, is an incident to the service. The relation of master and servant and the duties incident to such relation continue during such interval. Where, under such circumstances, the employe eats his dinner at the place where he is engaged in his work, it is not necessary to show that he

remained there by invitation of the master, for the reason that the right to remain grows out of the relation of master and servant, which continues during such cessation from actual labor.    But where a servant goes to another part of the premises, under such circumstances, for the purpose of eating his dinner, it is incumbent on him to show an invitation, express or implied, by the master to go to such other place.    In this case the jury has not found the ultimate fact that said Manifee was in the pump house on this occasion by invitation, express or implied of the master.    While it is true that the necessary and inevitable inference under the circumstances is, that there was an implied invitation to him to eat his dinner on the premises where he was engaged in his work, or rather that eating his dinner at such place was an incident to his service, the conclusion does not necessarily follow that he was eating his dinner by implied invitation of the appellant in the pump house. It was not necessarily an incident to his service as section hand in repairing the track of the rail road, that he should eat his dinner in the pump house in that vicinity.    It may be true that the natural and reasonable inference is, that the employe will likely go to the most convenient and suitable place on the premises to eat his dinner, but whether under the line of conduct of appellant in connection with the long established custom of the employes in eating their dinner in the pump house, and all the other facts and circumstances set out in the verdict there was an implied invitation by appellant to said decedent to eat his dinner in the pump house on this occasion was a question for the jury.    Assuming that the brief interval allowed the employes in which to eat their dinner was too short to enable him to leave the premises for that purpose when considered in connection with the inclement weather, the convenience of the pump house, the long use of the

house for that purpose, and all the other surrounding circumstances, are sufficient to authorize the inference by the jury that the decedent was there in the line of his duty by implied invitation of appellant, would not warrant the court in supplying such omission by intendment or inference. In brief, the conclusion of the court is, that the finding is not sufficient to sustain the judgment in behalf of appellee, for the reason, if for no other, that the jury failed to find the essential ultimate fact that the decedent was in the pump house in the line of his duty by implied invitation of appellant.

*Noblesville, etc., Co.* v. *Loehr*, 124 Ind. 79, 83; *Louisville, etc., R. W. Co.* v. *Costello*, 9 Ind. App. 462, 467.

Judgment reversed with instructions to sustain appellant's motion for a new trial.

Filed November 6, 1895.

## CONCURRING OPINION.

Ross, J.—The learned counsel for appellant earnestly insist that the complaint in this case proceeds upon the theory that the decedent, Manifee, was in the pump house at the time of receiving the injuries which resulted in his death, by the invitation of appellant, and that the motion to make the complaint more specific, by setting out in detail what constituted the invitation relied on, should have been sustained.

As to whether or not the decedent was at the time he was injured in the pump house by the invitation of appellant is, I think, an inference of law to be drawn by the court from stated facts, and not an inference of fact to be drawn by a jury from the evidence. It is the law that determines what amounts to an invitation; hence, to aver that the decedent was in the pump house by the

invitation of appellant amounts to nothing more than the statement of the pleader's conclusion. When the facts relied upon as constituting an invitation have been pleaded, the court then determines whether or not in law they constitute an invitation.

Without further elaboration upon this question, it is sufficient, as I view thé allegations of the complaint, to say that it proceeds upon the theory that the decedent, at the time he was in the pump house and was injured, was, as appellee alleges, "engaged in the repair of the roadbed and tracks of said defendant (appellant) and in the line and discharge of his duty." If the pump house was the place where his contract of employment required him to perform his duties, then appellant was bound to see that it was reasonably safe for that purpose. The rules of pleading, however, require that one suing to recover for an injury received must allege such facts as show a duty owing from the wrong-doer to the wronged. If the relation of master and servant existed between them it arose by reason of a contract having been entered into ; for the relation of master and servant can arise only out of a contract, express or implied, between the master on the one hand and the servant on the other. "The relation of master and servant is one of contract" (Cooley Torts 42), and that contract determines the duty owing. A duty must be shown, for to merely allege that the relationship of master and servant exists does not show either what the servant has contracted to do for the master, or what duty the master owes to the servant. The master is not bound to do anything except that which he contracts to do for the protection of his servant, and unless the master has imposed upon himself or assumed special duties for the benefit of the servant, by the contract of employment, the law says his duty is fulfilled when he has furnished the

servant with a reasonably safe place in which, and reasonably safe machinery with which, to work.    This is the duty implied by the law as having entered into the contract of employment.    If more onerous duties are imposed it is because the contract of employment specially exacts them.    The vital question to be considered, therefore, is :  Was the decedent rightfully in the pump house?

It must be conceded that if he was rightfully in the pump house it was because under his contract of employment the appellant agreed to, and did, provide that as a place where he should go to perform the duties which he undertook to perform.    Upon no other hypothesis could he have been there rightfully.

A part of the duties which he was required to perform under his contract of employment "was to unload coal for the pump house, and to unload sand to be dried in the pump house."    None of his duties, so far as the verdict shows, required him to go into the pump house at all.    If he went there it was not because his duties required him to do so.

It also appears that at noontime each day for thirty minutes the employment ceased and the decedent used the interval to eat his dinner ; but did the appellant contract to furnish him a place in which to eat his dinner where he would be sheltered from the storm and where he could make himself comfortable while eating?    If it did, and the pump house was the place which it provided, then it owed the deceased the duty of seeing that the place so provided was reasonably safe for the purpose intended.

I am unable to clearly understand what my colleague who wrote the main opinion means when he says: "*When, as in this case, so brief an interval is allowed the employe in which to eat his dinner that he cannot*

*leave the premises of his employer for that purpose his*
*act in eating his dinner on the premises is an incident*
*to the service.*"

Is the language quoted intended as implying that
during the thirty minutes allowed at midday the deced-
ent was performing his duty to appellant which he
agreed to perform under his contract of employment?
If that is the meaning to be attached to the language
used I must at once dissent from the proposition, for it
is evident that when the noon hour arrived the deced-
ent's duty to appellant ceased and appellant's duty to
decedent, except the duty to permit him to depart in
safety, ended.

Is it meant to imply that because the time allowed
was too short to permit the decedent to go to his home,
several miles distant, eat his dinner and return in time
to begin work at the usual hour designated for that
purpose, therefore his employment continued whether
he was in the discharge of his duties or not?

If the duty of a master to his servant is not to depend
upon the contract of employment entered into between
them, but upon what a jury shall determine they should
have contracted for, then it is right to say that because
the jury find that the deceased could not go home to
eat his dinner in the limited time allowed him, "his act
in eating his dinner on the premises is an incident to
the service." The law does not infer that by the con-
tract of employment the master agrees to allow the
servant time to eat his dinner. If it did it must also
infer that the master must give the servant time enough
to go to his home for that purpose and return to his
work. Does the law assume to say that parties shall
enter into such contracts only as will admit of the eat-
ing of a meal at midday by the servant? I take it that
parties may contract that the servant shall work from

seven o'clock in the morning until five o'clock in the evening without any intermission, and that the law will uphold and enforce the contract. If that be true, then the fact that · an intermission of thirty minutes in the middle of the day is allowed the servant by his contract does not impose upon the master the duty of furnishing the servant a place in which to eat. Suppose the jury had found that the place where the deceased was compelled to work was so far from his home that the time allowed between the quitting hour at night and the hour for resumption of work in the morning was so short that the deceased could not go home and get the sleep which nature required that he should have, and that for that reason he slept in the pump house, as well might this court say : *That so brief an interval was allowed the employe in which to sleep that he could not go to his home and get his needed rest, hence his act in remaining on the premises and sleeping in the pump house was an act incident to the service.*

Of course if the contract of the parties does not control and we are to hold that it is the province of the jury to make such a contract as they may conclude the parties should have made, then it is proper for them to decide as a question of fact that because the interval of thirty minutes was too short to permit him to go to his home, eat his dinner and return in time to resume his work at the regular hour, *his act in eating his dinner on the premises was an incident to the service.* If this is within the province of the jury then it is also their right to determine whether or not it was the duty of appellant to furnish the decedent with a comfortable place in which to eat and if need be a place to sleep. Incidents to service are such only as are embraced within the contract of employment and if not expressly defined therein are such as the law implies and not what a jury

may infer.    In this instance, to say that his act in eating his dinner, on the premises was an incident to the services, is to say that the contract of employment was that he should eat his dinner there, and if the jury are to be allowed to determine whether, because the time for eating was too short to permit him to go to his home where he could eat in comfort, sheltered from the storm and beside a warm fire, that his going into the pump house "was an incident to his service" or "an implied invitation to go there," then it is because appellant undertook and agreed to furnish him a place where he could eat his dinner. I am unable to see what the length of the interval allowed for the noonday meal has to do with the question of appellant's duty to the deceased. To my mind it can make no difference in determining the legal duty owing from appellant to the deceased whether the time allowed was thirty minutes or two hours, or whether he lived ten rods away from the railroad or ten miles.    If the duty depends upon the distance the employe lives away from his place of work and the time allowed him to go there to eat, the same duty would not be owing to all employed in the same work, for some living but ten or fifteen rods from the railroad would have ample time to go home and eat their dinners in thirty minutes, while others living ten miles away could not do so in two hours.    The question of time, whether long or short, has nothing to do with determining appellant's duty.    The only question is : What was the contract between the parties, and was it appellant's legal duty under that contract to furnish him a place to eat his dinner, or even to permit him to go into the pump house for that purpose?    Unless a duty was owing from appellant to appellee, the neglect of which resulted in his injury, there is no right of recovery.

"It is essential to the successful maintenance of an

action of negligence to *show* the existence *of a duty on the part of the defendant to the plaintiff*, and a loss suffered as a direct consequence of the breach of such duty." Roberts, Duty and Liability of Employers, 22.

There can be no case of the negligent injury of one person by another in the absence of a legal duty due from the person inflicting the injury to the person on whom it is inflicted.

"The first requisite in establishing negligence is to show the existence of the duty which it is supposed has not been performed." Cooley Torts, section 659.

The relation of master and servant being contractual, the liability of the master to the servant is co-extensive with the contract of employment, and does not extend beyond it.

In *Wright* v. *Rawson*, 52 Iowa 329, which was an action by the servant against the master to recover damages for personal injuries received after leaving his usual place of work, and while visiting the other work-men, which was customary, the court says:

"In order to establish liability of defendant, it must be made to appear that the intestate was in the defendant's employment and in the proper discharge of duty, and that he did not voluntarily seek a place of danger. It cannot be claimed that the defendant would be liable if the intestate had been a visitor to the mines, or had left his proper place and sought the dangerous room without thereby serving defendant or discharging any duty of his employment. When the accident happened it clearly appears that the intestate was not engaged in mining, which was his employment; that his proper place was not in the room where he was injured, but, on the contrary, he was a visitor there for his own pleasure or amusement. The intestate, not being engaged in his employment, was in the same position as a

visitor to the mine. An employe having voluntarily put himself in danger, he cannot recover. *Doggett* v. *Ill. Cent. R. R. Co.*, 34 Iowa 284. The custom of miners to visit their fellow-workmen and the acquiescence of the defendant in such custom cannot be regarded as an invitation for the workmen to leave their proper places and frequent dangerous parts of the mine at the risk of defendant."

The relation of master and servant exists only when the person sought to be charged as master has the right of control over the person whom it is sought to show was a servant *at the time* when the injury happened. "He must, at the time, have had the right to direct the action of the servant, and to accept or reject its rendition." Woods, Master and Servant, section 306.

If the relation of master and servant did not exist at the time the decedent went into the pump house and was injured, and in this case it cannot well be contended that such relation did exist, then he was a mere licensee and went there at his own risk, enjoying the license subject to its concomitant perils. The appellant was not bound to keep its pump house in a safe and suitable condition for those who might go in there solely for their own convenience or pleasure. The law imposes no such duty upon it. I deem it unnecessary to cite authorities to sustain this proposition, for it is so well settled that no court has attempted to controvert it.

With these observations I concur in the result reached in the opinion of Judge Davis, and would add that under the facts found by the jury the appellee would not be entitled to recover upon any theory.

Filed November 6, 1895.