argued that the model of the machine indicates that from two to five inches or more of the plaintiff's hand must have been engaged before the foot clutch could have worked under any circumstances, and that, therefore, the more serious part of the injury had obviously occurred before any diligence on the part of the plaintiff could have succeeded in stopping the machine. I fail to find that any exception was taken to the instruction as to the damages, or that any request was made as to how much of the injuries should be the subject of compensation. I am not prepared to say, even if the plaintiff must have suffered some injury to his finger or his hand as the result of contact with the rollers for which he could not recover compensation, that the amount of damages awarded—$5,000—is excessive for so much of the injuries which he might have prevented if he had known of the existence of the throw-out, the purpose thereof, and could have used it to stop the machine after his finger had become entangled in it.

[5] I think, however, that the motion for the extra allowance should not have been granted, as the case is not difficult and extraordinary. Standard Trust Co. v. N. Y. C. & H. R. R. Co., 178 N. Y. 407, 70 N. E. 925.

Judgment modified by striking out the provision for extra allowance, and, as so modified, the judgment and order should be affirmed, without costs. All concur.

---

## CONNELL v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Second Department.   May 26, 1911.)

1. MASTER AND SERVANT (§ 276*)—INJURIES TO SERVANT—NEGLIGENCE—SUFFICIENCY OF EVIDENCE.

In an action against a railroad for death of a servant killed by a train while standing between the track and a wall, and not in his place of work, through defendant's alleged negligent failure to signal, evidence *held* insufficient to support a judgment for plaintiff.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 276.*]

2. MASTER AND SERVANT (§ 89*)—SAFE PLACE FOR WORK—SCOPE OF EMPLOYMENT.

A master's duty to furnish his servants a safe place for work extends to such parts of his premises only as he has prepared for their occupancy while doing his work, and to such other parts as he knows or ought to know they are accustomed to use while doing it, and, when the servant goes to some other part for his own convenience, the general rule is that he is regarded as a licensee.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 153; Dec. Dig. § 89.*]

3. NEGLIGENCE (§ 32*)—DANGEROUS PREMISES—DUTY TO LICENSEES.

The duty of keeping premises in a safe condition, even as against a mere licensee, may arise where affirmative negligence in the management of the property or business of the owner would be likely to subject persons exercising the privilege theretofore permitted to great danger.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 42–44; Dec. Dig. § 32.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. NEGLIGENCE (§ 1*)—NATURE AND ELEMENTS.
    Negligence is not absolute or intrinsic, but is always relevant to some circumstance of time, place, or person.
    [Ed. Note.—For other cases, see Negligence, Cent. Dig. § 1; Dec. Dig. § 1.*]

Appeal from Trial Term, Orange County.

Action by Katherine Connell, as administratrix, etc., of Michael Connell, deceased, against the New York Central & Hudson River Railroad Company. From a judgment for plaintiff, and from an order denying defendant's motion for a new trial, it appeals. Reversed, and new trial granted.

Argued before JENKS, P. J., and THOMAS, CARR, WOODWARD, and RICH, JJ.

Charles F. Brown, for appellant.
R. H. Barnett, for respondent.

JENKS, P. J. [1] This action is brought under the employer's liability act (Consol. Laws 1909, c. 31). It is clear enough that plaintiff's intestate was killed in consequence of the passing of defendant's train. When last seen, he was standing in a space between the defendant's tracks and retaining wall, facing that wall, in an act of urination. The train was an irregular one, southbound, and traveling at the rate of 10 or 12 miles an hour. The intestate was a flagman stationed at the grade crossing of a highway in the city of Newburgh. His long hours of continuous service naturally required him to relieve such calls of nature during service. As there is no proof that the defendant furnished facilities or place for urination, it may be assumed that he was compelled to seek his own place for such purpose. The distance between the nearest rail and the wall was 5 feet 9 inches, and, although the overhang of the locomotive was 18 inches, there remained sufficient space for his security if he had stood close to the wall. His position negatives the supposition that he was looking for any oncoming train, and, moreover, the evidence shows that his view to the north was cut off by certain belongings of the defendant in that space. One witness describes the place as "blinding." Doubtless he had taken this occasion intervening the passing of regular trains. It is but surmise whether he stood too close to the rails for safety, or, unheeding, stepped backwards or turned into collision.

Although the relation of master and servant was not suspended at this time (Heldmaier v. Cobbs, 195 Ill. 172, 62 N. E. 853; C., C., C. & St. L. R. R. Co. v. Martin, 13 Ind. App. 485, 41 N. E. 1051), the servant was not in his place of work. And therefore this case differs from the cases when the servant went to a water-closet, or a lavatory, or a place to drink, or a place to eat a noontide meal or to change his clothes, when such places were either furnished by the master or at least the master had acquiesced in such uses—e. g., Ryan v. Fowler, 24 N. Y. 416, 82 Am. Dec. 315; Muhlens v. Obermeyer, 83 App. Div. 88, 82 N. Y. Supp. 527; Muller v. Oakes Mfg. Co., 113 App. Div. 689, 99 N. Y. Supp. 923; C., C., C. & St. L. R. R. Co v. Martin, supra

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

—for in this case the servant had left his post and had sought this place in the premises of the master for his own personal convenience or necessity. And there is no proof that the master had indicated this place as one to be used for urination, or that the master knew or should have known that it had been so used, or that necessarily it only could be used for that purpose.

[2] "A master's duty in respect to furnishing his servants a safe place in which to work extends to such parts of his premises only as he has prepared for their occupancy while doing his work, and to such other parts as he knows or ought to know they are accustomed to use while doing it." Morrison v. Burgess Sulphite Fibre Co., 70 N. H. 406, 47 Atl. 412, 85 Am. St. Rep. 634, quoted in Labatt on Master and Servant, p. 1845. See, too, Keenan v. N. Y., L. E. & W. R. R. Co., 2 Misc. Rep. 34, 21 N. Y. Supp 445, affirmed 145 N Y. 190, 39 N. E. 711, 45 Am. St. Rep. 604; Ahern v. Hildreth, 183 Mass. 296, 67 N. E. 328. And, when the servant goes to some other part of the master's premises simply for his own convenience and accommodation, the general rule is that he is regarded as a licensee. Schmnoske v. Asphalt Ready Roofing Co., 129 App. Div. 500, 114 N. Y. Supp. 87; O'Hare v. O'Rourke Engineering Cons. Co., 135 App. Div. 348, 120 N. Y. Supp. 404; Haber v. Jenkins Rubber Co., 72 N. J. Law, 171–174, 61 Atl. 382; Labatt, supra, p. 1846, and authorities cited. But there is a well-recognized exception to this rule, which requires discussion of the assigned negligence in this case. We may first disregard any question that could arise from the presence of the servant upon the tracks, or from the fact that he was or should have been seen from the oncoming train; for there is no evidence that he was ever upon the tracks, and there is evidence that when last seen at the time the train was but 10 feet distant he was not upon the tracks, and which indicates that he could not have been seen from the oncoming train.

[3] The exception to the rule is expressed in Larmore v. Crown Point Iron Co., 101 N. Y. 395, 4 N. E. 754, 54 Am. Rep. 718, as follows:

"The duty of keeping premises in a safe condition even as against a mere licensee may also arise where affirmative negligence in the management of the property or business of the owner would be likely to subject persons exercising the privilege theretofore permitted and enjoyed to great danger. The case of running a locomotive without warning over a path across the railroad which had been generally used by the public without objection furnishes an example. Barry v. N. Y. C. & H. R. R. R. Co., 92 N. Y. 289 [44 Am. Rep. 377]. See, also, Beck v. Carter, 68 N. Y. 283 [23 Am. Rep. 175]."

The assigned negligence is that this train approached and came upon the intestate without warning. There is no contention that warning should have been given because of the presence of the intestate, but because there was a grade crossing 75 or 80 feet below the place where the intestate was killed. In other words, it is insisted that the breach of duty, if any, which arose solely in consequence of the existence of this grade crossing, might be invoked to the benefit of this plaintiff. There was proof that the rules of the defendant required the ringing

of a bell at the approach of such crossings, and there was proof that warranted a conclusion that this was not done in this instance.

[4] But actionable negligence involves a breach of duty to the plaintiff. Negligence is "not absolute or intrinsic," but "is always relevant to some circumstances of time, place or person." Wharton on Negligence (2d Ed.) § 25, note, and authorities cited; Cooley on Torts (3d Ed.) p. 1411; Sherman and Redfield on Negligence, § 8, and cases cited; Losee v. Clute, 51 N. Y. 494, 10 Am. Rep. 638; Savings Bank v. Ward, 100 U. S. 196, 25 L. Ed. 621. In Larmore v. Crown Point Iron Co., 101 N. Y. 394, 4 N. E. 754, 54 Am. Rep. 718, the court, per Andrews, J., say:

"There is no negligence in a legal sense which can give a right of action, unless there is a violation of a legal duty to exercise care. The duty may exist as to some persons, and not as to others, depending upon peculiar relations and circumstances."

The duty of the defendant as to those at or near the crossing could be entirely different as to those in no way related to the crossing. Larmore v. Crown Point Iron Co., supra, and Miller v. Woodhead, 104 N. Y. 477, 11 N. E. 57. It is not enough, then, to establish that the defendant was negligent, in that it did not ring its bell, but we must go forward to inquire whether in such negligence there was a breach of duty to the intestate. It seems to me that there was no relation between the crossing and the intestate at the place where he was killed. He was not using the crossing or approaching the crossing or attempting to cross near unto it or approaching along the highway. Physically he was not far distant, but legally he was not in a place relevant to it. The purpose of the signal was to warn those upon crossing the highway, and perhaps for the benefit of the passengers on the train lest there might be collision. Although the question of signal in this case does not arise under the obligation of statutory requirement but under the common law, yet the application of that obligation may be considered with reference to decisions under statutes. In Harty v. Central R. R. Co. of New Jersey, 42 N. Y. 468, the court approves the language of Allen, J., in People v. N. Y. Central R. R. Co., 25 Barb. (N.Y.) 199, in reference to the then existing statute that required signals at crossings:

"The only negligence alleged against the defendant was that its servants upon the engine did not ring the bell, nor blow the whistle, as required by the New Jersey law. The sole object of this law, it seems to me, was to protect persons traveling upon the highway, at or near the crossing. In the language of Allen, J., in People v. New York Central Railroad Co., 25 Barb. (N. Y.) 199, in reference to a similar law of this state, 'the hazards to be provided against were twofold: (1) The danger of actual collision at the crossing; and (2) that of damage by the frightening of teams traveling upon the public highway,' near the crossing. For the protection of such persons, railroads were required to put up the signboard at the crossing, and to ring the bell or blow the whistle."

In Vandewater v. N. Y. & N. E. R. R. Co., 135 N. Y. 588, 32 N. E. at page 637, 18 L. R. A. 771, the court say:

"When the duty to give signals at highway crossings was by statute imposed upon the railroad company, it was held that it did not apply in favor

of one who was walking upon the track, but that it was intended for the benefit of those who were traveling the highway. Harty v. Railroad Co., supra."

### Sherman and Redfield on Negligence (5th Ed.) § 470, say:

"Statutes requiring signals at crossings are enacted only for the benefit of persons intending to cross the track at a lawful crossing or proceeding on a highway parallel with the track. Persons walking along the track or trespassing thereon or occupied in work upon adjoining land are not entitled to the benefit of such statutes, whatever may be their common-law rights. But one who crosses the railroad on an open space or private way adjoining the highway is entitled to the benefit of the statute."

The supposititious case in Chrystal v. T. & B. R. R. Co., 124 N. Y. 519, 26 N. E. 1103, assumes a relation between the mother and the highway. See, too, O'Donnell v. Providence, etc., R. Co., 6 R. I. 211; Spicer v. Ches., etc., Ry. Co., 34 W. Va. 514, 12 S. E. 553, 11 L. R. A. 385; Bell v. Hannibal & St. Joseph R. Co., 72 Mo. 50; Atlanta & Charlotte Air Line R. Co. v. Gravitt, 93 Ga. 369, 20 S. E. 550, 26 L. R. A. 553, 44 Am. St. Rep. 145; Randall v. Baltimore & Ohio R. R. Co., 109 U. S. 478, 3 Sup. Ct. 322, 27 L. Ed. 1003. And, finally, there is no proof that, if this train running at this low rate of speed had rung its bell at such a distance from the crossing as was sufficient for proper warning for the crossing, such signal would have sufficed to warn the intestate so that he could have avoided contact with this train. The question of fellow servant is eliminated by the provisions of section 42a of the railroad law. Breed v. Lehigh Valley R. Co., 131 App. Div. 492, 115 N. Y. Supp. 1019.

I advise that we should reverse the judgment and order and grant a new trial, costs to abide the event. All concur.