SANDRA LEVINE, an Infant, by MORRIS LEVINE, Her Guardian ad Litem, et al., Appellants, *v.* CITY OF NEW YORK, Respondent.

Argued June 1, 1955; decided July 8, 1955.

*Sol Pottish* and *Morris Pottish* for appellants. I. The Appellate Division's first reason for reversal ("Going needlessly on a portion of the structure that was no part of the public thoroughfare, where no one was invited or had a right to be") is invalid. (*Boylhart* v. *Di Marco & Reimann,* 270 N. Y. 217; *New York Central R. R. Co.* v. *County of Erie,* 197 Misc. 801, 278 App. Div.

521, 304 N. Y. 565; *Palsgraf* v. *Long Is. R. R. Co.*, 248 N. Y. 339; *Parnell* v. *Holland Furnace Co.*, 234 App. Div. 567, 260 N. Y. 604; *Bowers* v. *City Bank Farmers Trust Co.*, 282 N. Y. 442; *Reilly* v. *Gristede Bros.*, 243 App. Div. 505, 268 N. Y. 564; *Earl* v. *Crouch*, 57 Hun 586, opinion in 10 N. Y. S. 882, 61 Hun 624, opinion in 16 N. Y. S. 770, 131 N. Y. 613; *Kunz* v. *City of Troy*, 104 N. Y. 344; *Sarapin* v. *S. & S. Corrugated Paper Mach. Co.*, 209 App. Div. 377; *Lee* v. *Van Buren & N. Y. Bill Posting Co.*, 190 App. Div. 742.) II. The Appellate Division's second reason for reversal (contributory negligence) is invalid. (*Zwack* v. *New York, L. E. & W. R. R. Co.*, 160 N. Y. 362; *Tucker* v. *New York Central & H. R. R. R. Co.*, 124 N. Y. 308; *Mangam* v. *Brooklyn R. R. Co.*, 38 N. Y. 455; *Byrne* v. *New York Central & H. R. R. R. Co.*, 83 N. Y. 620; *Collentine* v. *City of New York*, 279 N. Y. 119; *Palmer* v. *Dearing*, 93 N. Y. 7; *Moshier* v. *City of New York*, 190 App. Div. 111, 228 N. Y. 612; *Williams* v. *City of New York*, 214 N. Y. 259; *Hogan* v. *New York Central & H. R. R. R. Co.*, 208 N. Y. 445; *Kettle* v. *Turl*, 162 N. Y. 255; *Ramirez* v. *Perlman*, 284 App. Div. 82.)

*Peter Campbell Brown, Corporation Counsel* (*Fred Iscol* and *Seymour B. Quel* of counsel), for respondent. I. The city's duty to maintain the stairway and guardrails in good repair extended only to persons using them for their normal and intended purpose. (*Halpin* v. *New York Rys. Corp.*, 250 App. Div. 613, 276 N. Y. 545; *Levy* v. *City of New York*, 255 App. Div. 857, 280 N. Y. 637; *McCann* v. *City of New York*, 270 App. Div. 1040, 296 N. Y. 886; *Collins* v. *Noss*, 258 App. Div. 101, 283 N. Y. 595; *Lefkowitz* v. *Greenwich Sav. Bank*, 266 App. Div. 995, 293 N. Y. 711.) II. Plaintiff was guilty of contributory negligence in attempting to step down onto and to walk along the top of the tubular railing. (*Johnson* v. *City of New York*, 208 N. Y. 77; *O'Callaghan* v. *Commonwealth Engineering Corp.*, 247 N. Y. 127; *Bergman* v. *Feitelowitz*, 253 App. Div. 323, 278 N. Y. 620; *Foley* v. *Equitable Life Assur. Soc.*, 290 N. Y. 424; *Earley* v. *New York Tel. Co.*, 263 N. Y. 424, 264 N. Y. 528.) III. The failure of the Appellate Division to refer to its opinion in the order of reversal cannot alter the fact that the determination of the Appellate Division was not a dismissal on the law alone but a direction, as well, of judgment in favor of defendant based on findings of the Appellate Division with respect to the questions of fact.

CONWAY, Ch. J. Across the street from the house in which the infant plaintiff lived in a residential section of a crowded city there was a stairway which formed a part of a connecting public thoroughfare. Along at least one side of this stairway there was a handrail composed of two tubular iron pipes set one above the other about two feet apart and running parallel to the ground. At the foot of this stairway there was a concrete post or pillar to which this railing had originally been fastened; but over the course of time the top bar of the railing apparently had been broken off so that there was an open space between the jagged end of the pipe railing and its fastening on the concrete post. There was evidence that the railing had been in this defective and dangerous condition for some six years prior to this accident. In addition, an examination of the photographs which were introduced into evidence at the trial clearly shows that not only had the railing been broken off, but it had become twisted out of its original line.

On the day of the accident, October 21, 1947, the plaintiff — then about ten years of age — and several of her companions were playing a game of " follow-the-leader " in the area of the above-described stairway. When it came plaintiff's turn to be " leader ", she ascended a few steps of the stairway and then, using the railing as a ladder, she climbed up onto the concrete post at the foot of the stairs. She then started to step down onto the top bar or pipe of the railing, but she missed her footing due to the broken and twisted condition of the end of that rail. Her foot went into the open space between the jagged end of the railing and the concrete post, and the plaintiff's left thigh was impaled upon the end of the pipe, seriously injuring her and causing a large and permanent scar which troubles her when there is a change in the weather.

The infant plaintiff sued for damages for the injuries she sustained, and her father commenced a derivative action for the loss of services, companionship and prospective earnings of his daughter as well as the expenses incurred for hospital, surgical and medical charges. Although the defendant city admits that it may be liable to pedestrians who may be injured while using this railing, it contends that it was under no duty to this plaintiff when she used the railing as she was doing. The Appellate Division, agreeing with this contention, reversed a

judgment in favor of the plaintiffs and dismissed the complaint. The order of reversal, however, failed to comply with the requirements of section 602 of the Civil Practice Act, and hence we must deem it to have been a reversal upon the law alone (*McLean* v. *McKinley,* 307 N. Y. 661). Furthermore, inasmuch as the complaint has been dismissed, the plaintiffs must be given the benefit of every reasonable inference which can be drawn from the evidence.

Returning to that evidence, a further examination of the above-mentioned photographs of the scene of the accident shows that this railing enclosed a rectangular plot of ground, on at least two sides of which there were benches set against the railing. Whether or not there were also benches on the side where the plaintiff was injured does not appear, but it is apparent that people were expected to congregate around this small enclosed piece of ground to rest and talk. Any child could clamber on these benches, and climb over the railing into the enclosed piece of ground. The railing itself could be expected to attract them, under these circumstances, for use as a variety of "monkey bars." Evidence of children having played in this area was given in a deposition before the trial by a witness who had seen the accident. He stated that he had witnessed "children in the vicinity of the railing prior to the occurrence of the accident", and that they played on the railing itself. This whole area, therefore, took on many of the characteristics of a public park or playground to which entire families are invited to come and enjoy themselves. Under such conditions, the city is under a greater duty of care than would be the case if there were no benches here, and if people were not expected and invited to congregate in this area with their children (cf. *Collentine* v. *City of New York,* 279 N. Y. 119, 124–125; *Lessin* v. *Board of Educ. of City of N. Y.,* 247 N. Y. 503, 511–512; *Jewhurst* v. *City of Syracuse,* 108 N. Y. 303, 310– 312). For some *six years* prior to the plaintiff's accident, however, the city had allowed this dangerous and defective condition to remain a hazard to those who came here to obtain respite from the heat and congestion of the city.

Negligence is not a stereotyped thing, but, as courts have wisely said, it is a matter of time, place and circumstance; and the same act of a defendant may be a breach of duty toward one

person while not a breach of duty toward another. Thus in *Larmore* v. *Crown Point Iron Co.* (101 N. Y. 391), this court wrote, (per ANDREWS, J.), that " there is no negligence in a legal sense which can give a right of action, unless there is a violation of a legal duty to exercise care. The duty may exist as to some persons, and not as to others, depending upon peculiar relations and circumstances " (101 N. Y., p. 394; to the same effect, see *Bailey* v. *Central Vermont Ry.,* 319 U. S. 350, 353; *Sadowski* v. *Long Is. R. R. Co.,* 292 N. Y. 448, 454; *Mink* v. *Keim,* 291 N. Y. 300, 304; *Connell* v. *New York Central & H. R. R. Co.,* 144 App. Div. 664, 667–668).

It may be that if there had been no benches here and if parents and their children were not expected and invited to come here to rest, talk and relax, there might be no duty to children who played on the railing. That, however, is not this case. Any jury of reasonable men and women, perceiving the nature of this area, would immediately realize that youngsters whose propensities to play are known to all could be expected to play and climb around and over not only the benches and the stairs but also the railing. It cannot be said *as a matter of law,* therefore, that no jury could reasonably find that the city, under these circumstances, could or should have known of the dangerous condition of the railing and the hazard it posed, particularly to young children, and that by neglecting for some six years to repair this menace the city breached a duty to those children and to this plaintiff. Accordingly, it was error to reverse and to dismiss the complaint on the law alone, since a prima facie case of negligence had been established.

The judgment of the Appellate Division should be reversed and the case remitted to that court for determination of the questions of fact, without costs to either party (Civ. Prac. Act, § 602).

DESMOND, DYE, FULD, FROESSEL and VAN VOORHIS, JJ., concur; BURKE, J., taking no part.

Judgment reversed, etc.