proof sufficient in the scheme itself to warrant a conclusion of bad faith against these appointors. There is no proof of the needs of the charities, which are praiseworthy and well established, in comparison with those of the widow.

[4] But it is contended that there were benefits secured to the appointors which afford sufficient evidence to upset this disposition of the residuary estate. One of these appointors is the committee of the estate of the incompetent. It is argued that, as this action of the appointors increases that estate, the committee will receive more compensation. But we must assume that the court appointed the proper committee in consideration of all the circumstances. He must have given security, he is controlled by the court, and his compensation is determined by it. Sections 2337, 2338, 2339, Code of Civil Procedure. It appears that the widow, while competent, made a will, that these executors are executors under that will, and that all this was known to them before they acted in appointment. It is argued that, the larger the estate of the widow, the larger will be the commissions, and that her estate, thus increased, will afford full commissions to them both. But it must be remembered that the allowances, both to committee and to executors, rest upon the theory of compensation; that they are not gratuities.

We must not overlook the fact that this committee and these executors were well known to the testator and apparently had his entire confidence, as is shown by his will and his writings. One was his attorney at law, who had charge of his investments, and who is to be continued, and the other was an inmate of his home, and his secretary, who had charge of his affairs, and who is to be continued also. It was not at all strange that one should have been selected as the committee by the court, or that both should be chosen as executors by the testator and by the widow also.

I think that the circumstances are not sufficient to disturb the decree, which is affirmed, but without costs of this appeal. All concur.

---

(164 App. Div. 846)

### McAULIFFE v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Second Department. December 11, 1914.)

1. COMMERCE (§ 27*)—INTERSTATE COMMERCE—WHAT CONSTITUTES.
   Plaintiff, the conductor of a freight train, the second day before he was injured, took his train from the New Jersey terminal into New York, and the next day was employed in carrying freight between two New York points. The next day he was injured in a collision while returning with only a caboose to the New Jersey terminal. After his return he would have been entitled to eight hours' lay-off, and there was no showing that on again reporting for duty he would have been employed in interstate transportation. *Held*, that he was not engaged in interstate commerce when injured.

   [Ed. Note.—For other cases, see Commerce, Cent. Dig. § 25; Dec. Dig. § 27.*]

2. COMMERCE (§ 27*)—INTERSTATE COMMERCE—THOSE ENGAGED IN IT.
   The conductor of a freight train, returning from New York to the New Jersey terminal of his road, is not engaged in interstate commerce

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

by reason of the fact that his locomotive was hauling a dead engine belonging to his employer between the two states.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 25; Dec. Dig. § 27.*]

3. MASTER AND SERVANT (§ 265*)—INJURIES TO SERVANT—ACTIONS—INTERSTATE COMMERCE—BURDEN OF PROOF.

An employé of a railroad company, seeking to recover under the federal Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. 1913, §§ 8657–8665]), has the burden of proving that he was engaged in interstate commerce; for, the states having general authority over persons and property within their boundaries, Congress' action is circumscribed.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 877–908, 955; Dec. Dig. § 265.*]

4. TRIAL (§ 251*)—INSTRUCTIONS—APPLICATION TO ISSUES.

In an action by an injured employé of a railroad company, the verdict cannot be sustained, where the question of his contributory negligence was submitted under the terms of the federal Employers' Liability Act, which was not applicable because the employé was not engaged in interstate commerce.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 587–595; Dec. Dig. § 251.*]

Stapleton and Rich, JJ., dissenting.

Appeal from Trial Term, Orange County.

Action by Timothy McAuliffe against the New York Central & Hudson River Railroad Company. From a judgment for plaintiff, and an order denying a new trial defendant appeals. Reversed and remanded.

Argued before JENKS, P. J., and THOMAS, RICH, STAPLETON, and PUTNAM, JJ.

Albert E. Dacy, of New York City, for appellant.
R. H. Barnett, of Newburgh, for respondent.

THOMAS, J.   The primary question is whether the defendant, a common carrier, "while engaging in commerce between any of the several states," injured the plaintiff while "employed by such carrier in such commerce," within the meaning of the act of Congress of April 22, 1908 (35 Stat. 65, c. 149), commonly called the "Federal Employers' Liability Act." The plaintiff, conductor of freight trains, proceeding south with a locomotive tender and caboose, stopped at Cornwall for orders, and while crossing the north-bound track to register his arrival, was struck by the locomotive hauling train No. 3, bound for Chicago, Ill., and so concededly engaged in interstate commerce. The plaintiff's train was running unscheduled from Ravena, N. Y., to Weehawken, N. J., receiving orders from time to time between such terminals.

[1, 2] In my judgment, the plaintiff at the time of the accident was not engaged in interstate commerce. The defendant's railroad extended from Weehawken, N. J., to Buffalo, N. Y. The tracks were devoted to interstate and intrastate traffic. The tracks could not be intrastate one day and interstate another day. If they needed mending, all

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

acts therefor related to a plant permanently appropriated to the two kinds of traffic. It was not so with equipment. It could be employed for interstate or intrastate traffic, or both, as occasion required. For instance, on the second day before the accident it ran from Weehawken, N. J., to Ravena, N. Y., near Albany. I will assume that the purpose was for the two varieties of transportation. The day before the accident it was used for a round trip from Ravena to Kingston and return. That operation was all intrastate, and the freight was not interstate, so far as I discover. So in no proper sense was it returning from a trip devoted to intrastate and interstate transportation, or alone to interstate carriage. Nothing was returning but the locomotive, tender, and caboose—the appliance for motive power and shelter for the crew. It was going to Weehawken. For eight hours thereafter the plaintiff would be off duty, as is contended. Then he might return to his locomotive and caboose. What goods it would take, and for what destination, does not appear, even if it was then known. It might take no goods for delivery in the state of New York until it reached that state. Then the goods taken might be for destinations in New York. The dispatcher said that it was returning to Weehawken for another load. That was a statement based on the obvious fact that Weehawken was the southerly terminal. But when would the new freight be loaded? For what state or states would the load be destined? That was not presumably within the knowledge of a train dispatcher. There were orders that the train should, at West Haverstraw, N. Y., pick up a light or dead engine for Granton, N. J., which I understand to be at the southern terminal. The order was not carried out after the accident. But the train was not doing the work when the accident happened.

Nor, in my judgment, would it be interstate commerce in any sense to haul a dead engine, which, I understand, belonged to the carrier, from one place on its railroad to another point in another state, especially when disconnected with the transportation of interstate freight. Suppose the order had been to carry some railroad tools from Haverstraw to Weehawken. That would not be interstate commerce. The railroad company would hardly be in traffic with itself by transporting its property to or from different points on its road, or a division of it. In North Carolina R. R. Co. v. Zachary, 232 U. S. 248, 259, 34 Sup. Ct. 305, 309, 58 L. Ed. 591, Ann. Cas. 1914C, 159, it was said that:

"The hauling of empty cars from one state to another is, in our opinion, interstate commerce within the meaning of the act."

The defendant says that this utterance was dictum. However, I accept it as authority; but it does not apply to the present case. The locomotive and caboose and crew were not hauling empty cars from one state to another, nor were they returning from a trip after hauling empty or loaded cars between states, because after the outward trip was ended they were diverted to intrastate operation, and after such intervention were going back without transporting any objects of commerce from one state to another. They were carrying instrumentalities which had been and probably would be used in the future for interstate and intrastate transportation combined, or only for intra-

state purposes, or perchance for interstate commerce only. I cannot find that it has been decided that such act constitutes interstate commerce, but it has been in principle decided that it does not. In Illinois Central R. R. Co. v. Behrens, 233 U. S. 473, 476, 34 Sup. Ct. 646, 647, 58 L. Ed. 1051, Ann. Cas. 1914C, 163, Mr. Justice Van Devanter stated the facts as follows:

"The facts shown in the certificate are these: The intestate was in the service of the railroad company as a member of a crew attached to a switch engine operated exclusively within the city of New Orleans. He was the fireman, and came to his death, while at his post of duty, through a head-on collision. The general work of the crew consisted in moving cars from one point to another within the city over the company's tracks and other connecting tracks. Sometimes the cars were loaded, at other times empty, and at still other times some were loaded and others empty. *When loaded, the freight in them was at times destined from within to without the state or vice versa, at other times was moving only between points within the state, and at still other times was of both classes.* When the cars were empty the purpose was usually to take them where they were to be loaded, or away from where they had been unloaded. And oftentimes, following the movement of cars, loaded or empty, to a given point, other cars were gathered up and taken or started elsewhere. In short, the *crew handled interstate and intrastate traffic indiscriminately,* frequently moving both at once, and at times turning directly from one to the other. At the time of the collision the crew was moving several cars loaded with freight which was wholly intrastate, and upon completing that movement was to have gathered up and taken to other points several other cars as a step or link in their transportation to various destinations within and without the state. The question of law upon which the Circuit Court of Appeals desires instruction is whether, upon these facts, it can be said that the intestate at the time of his fatal injury was employed in interstate commerce within the meaning of the Employers' Liability Act."

After considering the power of Congress, the opinion continued:

"Passing from the question of power to that of its exercise, we find that the controlling provision in the act of April 22, 1908, reads as follows: 'That every common carrier by railroad while engaging in commerce between any of the several states * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employé, to his or her personal representative, * * * for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employés of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.' Giving to the words 'suffering injury while he is employed by such carrier in such commerce' their natural meaning, as we think must be done, it is clear that Congress intended to confine its action to injuries occurring when the particular service in which the employé is engaged is a part of interstate commerce. The act was so construed in Pedersen v. Delaware, Lackawanna & Western Railroad Co., 229 U. S. 146, 150, 152 [33 Sup. Ct. 648, 649, 650, 57 L. Ed. 1125, Ann. Cas. 1914C, 153]. It was there said: 'There can be no doubt that a right of recovery * * * is suffered while the carrier is engaged in interstate commerce and while the employé is employed by the carrier in such commerce.' Again: 'The true test always is: Is the work in question a part of the interstate commerce in which the carrier is engaged?' And a like view is shown in other cases (citing cases). Here, at the time of the fatal injury, the intestate was engaged in moving several cars, all loaded with intrastate freight, from one part of the city to another. That was not a service in interstate commerce, and so the injury and resulting death were not within the statute. *That he was expected, upon the completion of that task, to engage in another which would have been a part of interstate commerce, is immaterial* under the statute, for by its terms the true test is the nature of the

work being done at the time of the injury. The question is accordingly answered in the negative."

The language is explicit; it isolates completely the service at the time of the injury, and ascertains whether then and there the plaintiff was employed in interstate commerce; it ignores past service; it puts from view further service, and asks what was the nature of the carrier service at the period of accident. What was done in that case is not what was done in this instance; but the rule for testing the application of the statute is made very clear.

[3] The state of New York created the defendant for the public purpose to which its property within this state is devoted. Taking presumably from the southern terminal of the railway persons and property in some large degree received over waters falling under the municipal law of New York, it carries them for a short distance through the state of New Jersey, and thence along its line, even, it may be, to the western border of the state of New York. The property within the latter state is protected by and is subject to its dominion. It becomes related to the federal government only by contacts with interstate commerce. This may be when and while its property proximately touches such commerce. Thus its railway tracks, continued from state to state, appropriated to both varieties of traffic, cannot be shifted momentarily from one use to the other, for the reason that segregation to varying purposes is practically impossible. But the equipment is ambulatory in the matter of location, and subject to vicissitudes in regard to things carried and their destinations. As property it pertains to the domicile of its owner, and is amenable to the policy of the state whose public agent its owner is. Therefore in the progress of national unification Congress may stretch its hand no farther than the federal Constitution permits. All else falls under the sway of the state. So, then, when the question arises whether the federal act applies, the burden is upon the person asserting it to show that the facts at the time of the happening abated the original and primary sovereignty of the state, and permitted the exceptional and limited power of the federal government to attach. In this action the plaintiff has failed to make such proof.

[4] Inasmuch as the learned trial justice left the question of contributory negligence of the plaintiff to the jury, at least in part, under the terms of the federal statute, the verdict cannot be sustained upon our holding that this was not within the federal act of 1908.

The judgment and order should be reversed, and a new trial granted; costs to abide the event.

JENKS, P. J., and PUTNAM, J., concur. STAPLETON, J., votes to affirm, being of opinion that the evidence that the regular run of the plaintiff was between Weehawken, in the state of New Jersey, and Ravena, in the state of New York, and that at the time of the casualty the plaintiff's train, consisting of an engine, tender, and caboose, and carrying a full crew, was moving from Ravena to Weehawken, to *return* with freight, warrants the inference that at the time of the casualty the defendant was employed in commerce between states

RICH, J., concurs with STAPLETON, J., and is also of opinion that the case was properly submitted to the jury by the learned trial justice, and that the finding that plaintiff was free from negligence contributing to his injury is sustained by the evidence.