plaintiff having acquiesced in the decision by payment of the amount fixed by the order of the Appellate Division and accepted the stock, he is estopped from seeking additional damages.

The motion for judgment must be denied.

---

## McAULIFFE v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Second Department. May 5, 1916.)

1. COMMERCE ⬤═27—"INTERSTATE COMMERCE"—RAILROADS.

Where a freight conductor was in charge of a local freight from Weehawken, N. J., to Ravena, N. Y., carrying merchandise destined to points in Massachusetts, and left Ravena, bound south, with a locomotive, tender, and caboose, being handed a clearance card reading "Clear to Weehawken," and ordered to take a disabled locomotive from West Haverstraw across state lines to the railroad's roundhouse, either at Granton or New Durham, such conductor was engaged in "interstate commerce."

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 25; Dec. Dig. ⬤═27.

For other definitions, see Words and Phrases, First and Second Series, Interstate Commerce.]

2. MASTER AND SERVANT ⬤═137(4)—INJURIES—DUTY TO WARN OF DANGER.

Where an express train came into a station so late as to be substantially behind its time of scheduled arrival, the engineer should have signaled his approach, to warn a freight conductor having to cross the express track to register his own arrival.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 269, 270, 274, 277, 278; Dec. Dig. ⬤═137(4).]

3. MASTER AND SERVANT ⬤═289(19)—INJURIES TO SERVANT—CONTRIBUTORY NEGLIGENCE—RAILROAD SERVICE—QUESTION FOR JURY.

It cannot be held as matter of law that where trains meet at a point between stations, where they pass at their ordinary full speed, a freight conductor is bound to distinguish a local passenger train from an express, so as not to be entitled to rely on the belief that the express has passed him, while in fact it is behind schedule, and injures him as he crosses its track to register at a station.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1110; Dec. Dig. ⬤═289(19).]

4. MASTER AND SERVANT ⬤═286(31)—INJURIES TO SERVANT—DUTY TO WARN—QUESTION FOR JURY.

In an action against a railroad for injury to a freight conductor, through being struck by an express running behind schedule, while crossing the express track to register his own arrival, whether a reasonable warning from the engineer of the approaching express was required was a question for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1033; Dec. Dig. ⬤═286(31).]

5. NEGLIGENCE ⬤═101—CONCURRING NEGLIGENCE—EFFECT—FEDERAL EMPLOYERS' LIABILITY ACT.

In an action under the federal Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. 1913, §§ 8657–8665]) for injuries to or death of a railroad employé in interstate commerce, the jury must lessen plaintiff's damages in the proportion which his contributory negligence bears to the causal negligence attributable to both parties.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 85, 163, 164, 167; Dec. Dig. ⬤═101.]

---

⬤═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

6. TRIAL ⟊232(2)—REQUEST FOR DIRECTION OF SPECIAL FINDING—FORM.

In an action against a railroad, under the federal Employers' Liability Act, for injuries to a freight conductor, the request of defendant's counsel that the court direct the jury to find specially "what proportion of the plaintiff's negligence contributed to the accident, in case they should find the plaintiff's negligence was not the sole cause of the injury," was properly denied, as it should have presented a more concrete form for the special verdict.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 524; Dec. Dig. ⟊232(2).]

7. TRIAL ⟊350(6)—SPECIAL VERDICT—REDUCTION OF DAMAGES.

In actions against railroad companies for deaths of or injuries to their employés under the federal Employers' Liability Act, it is preferable that juries return special verdicts, relative to the reduction of damages by contributory negligence, elicited by proper questions, under Civ. Code Proc. § 1187.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 830; Dec. Dig. ⟊350(6).]

8. DAMAGES ⟊132(1)—PERSONAL INJURIES—EXCESSIVE VERDICT.

In an action against a railroad for serious injuries to its freight conductor in interstate commerce, verdict of $40,000 was excessive by $15,000.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 372; Dec. Dig. ⟊132(1).]

Jenks, P. J., and Thomas, J., dissenting in part.

Appeal from Trial Term, Orange County.

Action by Timothy McAuliffe against the New York Central & Hudson River Railroad Company. From a judgment for plaintiff, and an order denying a motion for a new trial, defendant appeals. Judgment and order reversed, and new trial granted, unless plaintiff stipulates to reduce the amount of the verdict from $40,000 to $25,000.

Argued before JENKS, P. J., and THOMAS, STAPLETON, MILLS, and PUTNAM, JJ.

Charles F. Brown, of New York City, for appellant.
R. H. Barnett, of Newburgh, for respondent.

PUTNAM, J. The first judgment recovered by plaintiff, a freight conductor in employ of defendant, was reversed by a divided court on the ground that plaintiff was not then employed in interstate commerce. 164 App. Div. 846; 150 N. Y. Supp. 512.

[1] The record upon the second trial has brought out further details of the plaintiff's employment on the day before his accident. It had been already shown that plaintiff had been conductor of a freight train that ran from Weehawken, N. J., to Ravena, N. Y. It was not clearly proved what was done on the day following. But it is now established that on this intermediate day, February 15th, plaintiff was ordered with a locomotive and caboose to Newburgh, where he took charge of a freight local bound back to Ravena, carrying merchandise destined to points in Massachusetts.

About 4:20 p. m. February 16th, the day of this casualty, plaintiff, with locomotive, tender, and caboose, left Ravena bound south. He was then handed a clearance card reading "Clear to Weehawken,"

giving this trip a definite character as an interstate return to Weehawken. Although plaintiff had to report for operating orders at divisional points, like Kingston and Cornwall, this card made it plain that his service was not a series of short runs between local points, but that he was bound through to Weehawken. The caboose in which the men were returning was the same as on the trip north on February 14th. It was bringing back the full freight crew. The locomotive, however, was different. With the ampler proofs on this second trial, bringing out the details of the character of the trains on the intermediate trip from Newburgh to Ravena, including the order to take a disabled locomotive from West Haverstraw, across state lines, to defendant's roundhouse, either at Granton or New Durham, we think an employment in interstate commerce has been sufficiently made out.

Appellant, however, contends that plaintiff was hurt solely through his own neglect. This locomotive and caboose were rounding a moderate curve as they came south into Cornwall about 7:55 p. m. When opposite the station, plaintiff came out on the front platform to listen for signals, as he had to cross the north-bound track and register with the local train dispatcher. Before his locomotive had stopped, and while running from two to five miles an hour, plaintiff stepped off the front of the caboose and had made one step into the north-bound track, in front of the north-bound Chicago Express (train No. 3), which struck him, causing very severe injuries. This express train was scheduled to arrive at 7:42 and was about 13 minutes late.

Beyond the station to the south (from which direction the express came), were two highway grade crossings—Hudson street, 182 feet south of the station, and, at a distance of 392 feet from the station, Clark's crossing, with a curve in the tracks between, so that from abreast the station a train could not be seen until 350 or 400 feet away. About 2,000 feet south of the station is the first whistling post, and then a second whistling post set 1,080 feet from the station. The practice under defendant's rules was for a long blast to be sounded, as a station signal, before a north-bound train would be in sight from the station, and then, when the locomotive was between these two grade crossings, so that the engineer could see the tracks ahead at the station, to give two or three short blasts when he came in sight of any train then standing on the south-bound track or entering the station. Several short, sharp blasts are also recognized railroad signals to persons on the tracks or in dangerous proximity thereto.

The engineer of the express claimed that he gave this station signal, and that the bell was rung, but no later whistle. As the automatic bell ringer on the locomotive had broken down 29 miles below at Nyack, it was claimed that the fireman rang the bell by a cord from his seat in the cab. There was evidence, however, from one of defendant's section hands, that a man with a light, presumably this fireman, was seen standing back on the tender as the locomotive passed the station.

On this second trial, the engineer admitted that when at a distance of about 300 feet he first saw the headlight of plaintiff's train, which from its signals he recognized as an extra, so that its conductor would

have to cross the north-bound track to register, with a return over this track to his train; that, although he had this view, with this knowledge of the situation, when 300 feet from the station, he gave no further warning signals, notwithstanding his approach from rounding this curve in the track. In view of the verdict, we must take it as a fact that this Chicago Express did not give any of the usual signals by whistle or bell before this casualty.

When about a mile and a half to the south of Newburgh, plaintiff passed a north-bound passenger train, which he mistook for this express. In submitting these issues to a jury, the learned trial court told them that a signal is not needed to warn a person who already knows that a train is coming. He added:

"But in this case the plaintiff claims that, although he knew about the schedule of the time the train No. 3 was due at Cornwall, nevertheless he believed that it passed him below Newburgh, but that it was not upon time, and, not being in upon time, he was entitled to the additional warning upon the part of this defendant. So, if you should find in this case that the plaintiff was not reasonably justified in relying upon the belief that the Chicago Express, No. 3, had passed his train outside of Newburgh, where he says this train, if on time, usually passed him, and you should find that there was no whistle sounded or bell rung, then you should find for the defendant."

The court thus ruled that the engineer was not held to signal to the conductors of other trains in order to advise them of the approach of a regularly scheduled express, if it were substantially on time, since such employés must, perforce their duties, become familiar with such train arrivals.

[2] Schowerer v. New Jersey & New York R. R. Co., 164 App. Div. 865, 150 N. Y. Supp. 439, also a freight train on a siding, does not control here, because in that case the incoming train was substantially on time. Hence this court might well have given the instruction that, if train No. 3 came into Cornwall so late as to be substantially behind its time of scheduled arrival, they might find that signals should be given, not only to warn passengers and those at a public crossing, but towards a freight conductor such as this plaintiff, having to cross the track to register at the station. The instruction as given, therefore, was more favorable to defendant than it was entitled to.

[3] Appellant urges that the verdict, to the effect that plaintiff was reasonably justified in supposing No. 3 had passed, was against the greater weight of evidence. That, however, becomes of less importance, in the view we take of the charge. The testimony inclines to the view that the north-bound train, which plaintiff had passed, was a local passenger train. It could hardly be held, as matter of law, that from the greater speed and number of the cars of a train thus met at a point between stations, where trains pass at their ordinary full speeds, a freight conductor would be bound to identify and distinguish an express from a local passenger train.

[4] While we held that the duty to signal when a train approaches a crossing does not ordinarily apply to an employé who leaves a place of safety to cross the tracks for a purpose of his own (Connell v. N. Y. C. & H. R. R. R. Co., 144 App. Div. 664, 129 N. Y. Supp. 666) this is a different situation. Plaintiff's duty required him to cross the tracks at Cornwall, a stop station for the express. He had listened

without having heard any of the usual signals. His position and probable danger became manifested to the express engineer. Both by the federal decisions (Norfolk & Western Ry. v. Earnest, 229 U. S. 114, 33 Sup. Ct. 654, 57 L. Ed. 1096, Ann. Cas. 1914C, 172; Franchina v. Chicago, B. & Q. R. R. Co., 195 Fed. 462, 115 C. C. A. 364), and by those of this state (Roll v. Northern Central R. Co., 15 Hun, 496, affirmed 80 N. Y. 647; Blanchard v. D., L. & W. R. R. Co., 211 N. Y. 79, 105 N. E. 90), the employé crossing the tracks in the line of his duty may be entitled to a reasonable warning from those in charge of an approaching train. Whether, in a particular situation, such a warning was required, cannot be determined adversely to plaintiff as a matter of law, but is a question for the jury. An issue remained for the jury as to a duty resting upon the engineer of this express train to give some signal, whether before reaching Clark's crossing, or after he had made out the distinguishing lights of this locomotive, with the indication that a person from this train would have to advance across the path of this express to register his arrival. Indeed, our previous order, when resettled, reversing on the sole ground that plaintiff was not engaged in interstate commerce, our reversal being "upon questions of law only, the facts having been examined and no error found therein" (166 App. Div. 931, 151 N. Y. Supp. 1127), by implication sustained the findings then made of defendant's fault.

Defendant's counsel asked the trial court to direct the jury to find specially "what proportion of the plaintiff's negligence contributed to the accident, in case they should find that the plaintiff's negligence was not the sole cause of the injury." This the court denied, to which defendant excepted. The federal statute, by which contributory negligence lessens the damages, is borrowed from the early negligence rule in Illinois, and the existing Georgia practice now embodied in Georgia statutes (Thornton, Fed. Emp. Liability [3d Ed.] § 78); also from the admiralty rule of apportionment (60 Cong. Record, p. 4536, quoted by Thornton, p. 169).

[5] If the damages are attributable to the faults of both plaintiff and defendant, the Supreme Court of the United States has strictly defined how such damages are to be apportioned. The jury must lessen plaintiff's damages in the proportion which his contributory fault bears, *not* to that of the defendant, but to the entire causal negligence, attributable to both. Second Employers' Liability Cases, 223 U. S. 1, 50, 32 Sup. Ct. 169, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44; Norfolk & Western Ry. v. Earnest, 229 U. S. 114, 33 Sup. Ct. 654, 57 L. Ed. 1096, Ann. Cas. 1914C, 172; Grand Trunk Western Ry. Co. v. Lindsay, 233 U. S. 42, 49, 34 Sup. Ct. 581, 58 L. Ed. 838, Ann. Cas. 1914C, 168; Seaboard Air Line Railway v. Tilghman, 237 U. S. 499, 35 Sup. Ct. 653, 59 L. Ed. 1069.

At the date of this trial (February 15–24, 1915) juries did not generally return special verdicts under this statute. Appellant cites N. Y. C. & H. R. R. Co. v. Banker, 224 Fed. 351, at page 354, decided June 22, 1915, four months after this trial, where Lacombe, J., said:

"Incidentally it may be remarked that it will be helpful in all trials under this act to have the jury indicate whether they find negligence on the plain-

tiff's side, and, if so, by how much they have reduced the verdict against the defendant."

[6] However exact theoretically the doctrine of comparative negligence may be, it has been doubted whether its administration will not become too complicated to be left to a jury. Beach on Contributory Neg. § 82. Yet it is less intricate than many other matters on which they have to pass. But these difficulties require that the factors entering into the verdict should appear in a form to prove that the statute, and its method of apportionment, have been observed. If by its large amount the verdict indicates that the jury reached it without any reduction, it amounts to a finding that plaintiff was free from contributory fault. Yet, according to the trial practice as understood and followed a year ago, both in the federal and state tribunals, we cannot say that the court committed reversible error in refusing counsel's request. To ask a jury for the "proportion" of plaintiff's negligence might indicate a fractional ratio, rather than the sum by which they lessened his recovery. If such a request were to be made, it should have presented more concretely the form for the special verdict.

[7] In future trials under this statute, we think it is preferable that juries return special verdicts. In this way the jury can better follow the processes of arriving at the recovery. By proper questions under Code of Civil Procedure, § 1187, the jury may be asked to say, for instance: If they find that defendant's negligence proximately caused this injury, what is plaintiff's total damage? If plaintiff's own want of care helped produce his injury, how much have they reduced plaintiff's damages? Thereby trials in the state court will accord with the more recently adopted method of returning verdicts under this statute in the United States District Courts.

[8] In which ever manner this jury may have contrasted the opposing charges of neglect, we think their $40,000 verdict excessive. If reached after a reduction, obviously this result, regarded as a residuum of plaintiff's damages, becomes still more extravagant. Hence the amount of the verdict calls on us to interfere. I advise that the judgment and order be reversed, and a new trial granted, costs to abide the event, unless within 20 days from the entry of the order herein plaintiff stipulate to reduce the amount of the verdict to $25,000, in which event the judgment, as thus modified, with interest thereon from its entry, March 1, 1915, and the order, will be affirmed, without costs of this appeal.

STAPLETON and MILLS, JJ., concur. JENKS, P. J., and THOMAS, J., concur in the suggestion as to the form of verdict, but dissent from the affirmance of the judgment, on the ground that in their opinion the plaintiff's negligence was the sole cause of the accident.