PHILIP LIERNESS, Respondent, *v.* THE LONG ISLAND RAILROAD COMPANY, Appellant.

Second Department, June 25, 1926.

Railroads — injuries to employee — action by employee to recover for injuries suffered while he was uncoupling car — coupling was defective — employee was engaged in interstate commerce — action is based on Federal Employers' Liability Act and on Federal Safety Appliance Act — charge that jury should find for defendant if plaintiff was solely responsible for injury was error — contributory negligence is not defense in action under Safety Appliance Act — question of fact whether Safety Appliance Act was violated — attempted correction of charge that contributory negligence was not defense did not cure error — written questions should have been submitted to jury — alleged payment of compensation did not bar action.

In an action by a railroad employee to recover for injuries suffered while he was uncoupling freight cars, which action was brought under the Federal Employers' Liability Act and the Federal Safety Appliance Act, the evidence supports the finding that the coupling in question was defective.

The verdict of the jury to the effect that the plaintiff was engaged in interstate commerce at the time of the accident is supported by the evidence, since it appears that while the particular car was empty, it was in a train of cars containing interstate commerce.

It was error for the court to charge the jury that their verdict must be for the defendant if the accident was caused solely by an act of the plaintiff for the case is predicated on both the Federal Employers' Liability Act and the Federal

Safety Appliance Act, and in an action under the Federal Safety Appliance Act contributory negligence is not a defense.

Under the evidence, which shows that when the plaintiff attempted to release the coupling pin by the use of the cutting lever on the side of the car, the pin was raised too high to permit the uncoupling of the car, a question of fact arose which was properly submitted to the jury whether the Federal Safety Appliance Act was violated.

The court should have distinctly charged the jury that if they found no violation of the Federal Safety Appliance Act, even though the plaintiff and defendant were engaged in interstate commerce, if they found that the plaintiff was guilty of contributory negligence, they might reduce any verdict in favor of the plaintiff to the extent of his negligence, and the court should have charged also specifically that if they found that there was a violation of the Federal Safety Appliance Act then the plaintiff was entitled to recover whether or not he was guilty of contributory negligence. The trial court failed to point out sharply the distinction between the two grounds for recovery and the rule relating to contributory negligence on each ground, and its attempted correction of the error at the request of the plaintiff did not serve to make the charge clear and explicit and left the rules of law in a state of confusion.

The present case is one peculiarly fitted to the practice of answers to written questions to be propounded to the jury, so that it may be learned on just what ground the verdict is arrived at.

The action of the defendant immediately after the accident in commencing payments to the plaintiff on the theory that it was paying compensation under the Workmen's Compensation Law does not bar the plaintiff's right of action herein, for in order to do that it was necessary for the defendant to show an agreement by the plaintiff to take a specified sum or a sum measured by the terms of the Workmen's Compensation Law, and that payments were made accordingly whereby an accord and satisfaction or a release by a payment in full was established. If that had been done the question of a waiver of a right to sue might be in the case, but no such defense was pleaded or proved.

APPEAL by the defendant, The Long Island Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 5th day of February, 1926, upon the verdict of a jury for $14,860, and also from an order entered in said clerk's office on the 9th day of February, 1926, denying defendant's motion for a new trial made upon the minutes.

*Thomas J. Brennan* [*William J. O'Brien* and *Joseph F. Keany* with him on the brief], for the appellant.

*Humphrey J. Lynch* [*Sol Gelb* and *J. Arthur Siedman* with him on the brief], for the respondent.

KAPPER, J. Plaintiff was a brakeman in the employ of the defendant railroad company. He was hurt at about eight o'clock A. M. of September 21, 1925, which hour was practically the close of his hours of work which began at midnight of the night before. The defendant maintained a large freight yard in Long Island

City known as the North Shore yard, and in which there was a large number of tracks utilized for shifting and moving freight cars. Plaintiff was required to uncouple a freight car from the locomotive. The car was one of a train of freight cars. The operation of uncoupling required the plaintiff to work what was called a cutting lever which extended outside of the freight car and was in such position that its operation either by hand or by foot would not require the brakeman to go between cars. By pressing the cutting lever, a coupling pin would automatically raise up or become dislodged so as to permit the couplers to separate. Plaintiff says that on this occasion he operated the cutting lever in the usual and customary way, by pressing down on the lever with one foot while he supported himself with the other foot in the "stirrup" which was attached to the outside of the freight car. Before pressing down on the cutting lever he claims he gave the engineer a sign to slack so as to dislodge the pin, and that the engineer responded to that signal; that he then "shoved down on the cutting lever and the pin came up but it came up too far in a position where it wouldn't release, and a pin of that sort is supposed to drop, you are supposed to hold it up so as to release it;" that when the "pin is too high" the coupler will not open; that when he found it would not work he went to the top of the freight car and over onto the tender of the engine from which he climbed down, bringing him between the tender and the car, for the purpose of endeavoring to manipulate or properly dislodge the coupling pin. His testimony then proceeded as follows: "Q. What then did you do? A. Then I tried to shake the pin down so as to bring it in a position where it would release. Q. Did you have difficulty in that respect? A. Yes, I did. Q. What was the difficulty? A. It would not drop for me and I had to use plenty of force on it. Q. What was holding it? A. The tension. Q. How did you attempt to lower it? A. By shoving it down. Q. With your hands or feet or what? A. With my hand." When he did this, he claims that the engineer moved the engine forward which, taking up the slack, caused his foot to be caught and partly crushed "between the head of the drawhead and the end sill." On cross-examination he testified that before going between the tender and the car, after unsuccessfully using first the cutting lever on the car, he had also endeavored to dislodge the pin by the aid of a like cutting lever that was on the locomotive, and that this engine lever failed to move the coupling pin at all whilst the lever on the car moved it "too much." He further claimed that when the coupling pin "comes up too high it will block the knuckle;" that when he went between the tender and the car it

was his intention " to shove the pin down that was on the box car into a position where it would release;" that he pushed the pin down with his hand to some extent which he thought released the coupler; that there were three movements of the engine, the first one upon his signal being backwards to give the slack required, that it then went ahead, and thirdly, that it came back again, upon which last movement his foot was caught.

The defendant called as witnesses the train conductor, the locomotive engineer and fireman, the latter of whom was operating the engine at the time under a sort of training to fit him to be an engineer, and two other brakemen engaged in like employment as the plaintiff. There was no testimony offered by defendant from which it could be said that a finding should have followed that there was no defect in the coupling.

The complaint charged the defendant with being engaged in interstate commerce at the time of the accident, and that the plaintiff's work fell within that category. The complaint further alleged that the defendant was negligent in its management of the train, and that " by reason of the defects and insufficiencies due to the negligence of the defendant, its agents and servants, in the locomotives, cars, engines, appliances, brakes, coupling pins and other equipment, and because of the reckless and dangerous manner in which it caused its cars to be operated, and because of the failure on the part of the defendant to comply with the laws of the United States, including the Employers' Liability Act and the Safety Appliance Act, and because of its failure to provide suitable and proper safety appliances upon its said car," his injury was caused. The complaint further specified as grounds of negli-gence, defective coupling devices, a lack of proper signals to protect plaintiff in his work, and a negligent and careless operation, management and control of " said engine and cars."

The answer admitted that at the time in question and for some time prior thereto the defendant was engaged " in what is commonly called interstate commerce." This was likewise admitted upon the trial, but the admission was coupled with a claim that the defendant was not so engaged " at the time of the happening of this accident."

Testimony on behalf of the plaintiff given by an employee of the defendant whose work required him to proceed to the different stations of the defendant and to check up the freight cars and " keep them moving," established that the freight yard in question received large numbers of freight cars from " floats " which transported them in the harbor and rivers surrounding Manhattan island from ports in New Jersey and which cars were conveying freight from various foreign States; that the car here involved

was unloaded in this yard at an early hour that morning from a float of the Lehigh Valley railroad, admittedly a foreign railroad company and the owner of this car; and that with this particular car there were twenty other freight cars received from the Lehigh Valley Railroad Company's floats. Although the car in question is claimed to have been empty, it was attached to cars that were loaded, and which were intended for a destination on Long Island sent from foreign States. The question whether the plaintiff was engaged in interstate commerce at the time of his injury was submitted to the jury, and I think the evidence was sufficient to permit them to find that he was so engaged. " A brakeman on an intrastate car in a train consisting of both intrastate and interstate cars who is engaged in cutting out the intrastate car so that the train may proceed on its interstate business, is while so doing engaged and employed in interstate commerce and may maintain an action under the Employers' Liability Act." (So held, as per syllabus, in *N. Y. Central R. R.* v. *Carr,* 238 U. S. 260.) The question is presented on this appeal whether there was a proper submission of the issues to the jury. The trial court, after stating at length the contents of the pleadings, instructed the jury to find a verdict for the defendant if the plaintiff was " guilty of some rash and ill-considered act " and was himself solely responsible for this accident. This would have been clear enough if the action were predicated solely upon the Employers' Liability Act and the recovery sought had been limited to a charge of negligence upon the part of the engineer in the operation of his engine causing its backward movement and injuring plaintiff's foot. In such a case the engineer's negligence is that of the defendant. " The rule that the negligence of one employé resulting in injury to another was not to be attributed to their common employer, is displaced by a rule imposing upon the employer responsibility for such an injury, as was done at common law when the injured person was not an employé." (*Second Employers' Liability Cases,* 223 U. S. 1, 49; *Reed* v. *Director General,* 258 id. 92, 95.) But there was the other issue in the case, namely, the alleged defective coupling, and that defect, if it existed, involved a violation of what is known as the Federal Safety Appliance Act (Act March 2, 1893, 27 U. S. Stat. at Large, 531, chap. 196, § 2; Barnes' Fed. Code, § 8024), which reads as follows: " That on and after the first day of January, eighteen hundred and ninety-eight, it shall be unlawful for any such common carrier to haul or permit to be hauled or used on its line any car used in moving interstate traffic not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends

of the cars." This act has frequently been construed. Our Court of Appeals (per CARDOZO, J., *Ward* v. *Erie R. R. Co.*, 230 N. Y. 230, 232) have held an interstate carrier, railroad company, " subject to the provisions of the Safety Appliance Act * * * which gives protection to travelers and employees, whether the transit at the moment of the injury is interstate or local." So, also, in *Cott* v. *Erie R. R. Co.* (231 N. Y. 67, 72) the ruling was that a terminal railroad, which switches indiscriminately for foreign and domestic cars, is itself an instrumentality of interstate or foreign commerce, subject at all times to the Safety Appliance Act of Congress which must be obeyed by interstate carriers even in intrastate transactions; and that the only knowledge upon the part of the railroad company to bring it within the obligations of the act " is knowledge that the facilities of the terminal are to be utilized indiscriminately by foreign and domestic cars in foreign and domestic commerce."

The United States Supreme Court have held (*Minneapolis & St. Louis R. R. Co.* v. *Gotschall*, 244 U. S. 66) that negligence may be inferred on the part of the railroad company " from the fact that the coupler failed to perform its function, there being no other proof of negligence." Again, in *San Antonio R. Co.* v. *Wagner* (241 U. S. 476) it was said (p. 483): " The evidence of bad repair in the automatic equipment was not confined to the fact that the drawbar on the engine was out of line; *the fact that the coupling-pin on the box car failed to drop as it should have done at the first impact, and required manipulation in preparation for the second impact,* together with the fact that the drawbar on the engine was so far out of line as to require adjustment in preparation for the second impact, and the opinion evidence, being sufficient to sustain a finding that the equipment was defective." (Italics mine.) The conclusion is properly reached upon authority that a question of fact was presented whether the Safety Appliance Act was violated in the case at bar. When, however, the negligence complained of is *solely* that of a violation of the Safety Appliance Act, it is important to note that the defense of contributory negligence is unavailing (*Pless* v. *New York Central Railroad Co.*, 189 App. Div. 261, 263; affd., without opinion, 232 N. Y. 522; certiorari denied, *sub nom. New York Central Railroad Co.* v. *Pless*, 258 U. S. 620), or, as was said in *Payne* v. *Connor* (C. C. A. 274 Fed. 497, 501), in a case involving a question of compliance with the Safety Appliance Act, the question of contributory negligence " would be immaterial."

Having in mind, therefore, that the issues in this case were such as would have permitted the jury to find that the negligence complained of was either the acts and conduct of the engineer,

or a violation by the defendant of the Safety Appliance Act, or that there was no negligence on defendant's part but that the accident was wholly due to the plaintiff's own carelessness, we are required further to consider the charge of the trial court. He was requested by the defendant to charge, " that if there is no violation of the Safety Appliance Act, even though the plaintiff and defendant were engaged in interstate commerce, if the plaintiff was guilty of negligence which contributed to the happening of this accident the jury may reduce any verdict which they may find in his favor to the extent of his negligence." This was refused, and to the refusal the defendant excepted. In his main charge the trial justice said: " If you should find that the Federal Law applies, that compensation is not a bar, and would be eliminated by you as a defence. What as to this question of contributory negligence? Under the ordinary accident case the conduct of the plaintiff would be of very great interest to you, all that he did there. If this is an interstate matter the contributory negligence of the plaintiff ceases to interest you." During the course of the charge, and upon the court's suggestion to both counsel to present at that time " any particular requests that they desire," defendant's counsel after making such requests, excepted " to that portion of your Honor's charge in which you say in substance that if the plaintiff and defendant were engaged in interstate commerce then the question of the contributory negligence of the plaintiff would cease to interest the jury." At this point, counsel for plaintiff interjected: " May I say this: I think your Honor should have supplemented that statement with the assertion that if they find a violation of the Safety Appliance Act." To this statement of plaintiff's counsel the court said: " I add that."

I think there was error in this charge. The case was not submitted to the jury solely under the Safety Appliance Act. It was submitted upon the various issues already stated. The jury should have been told that the Federal Employers' Liability Act (Act of April 22, 1908, 35 U. S. Stat. at Large, 66, chap. 149, § 3; Barnes' Federal Code, § 8071) provides for a diminution of damages in the jury's assessment " in proportion to the amount of negligence attributable to such employee." There was nothing in the main charge that enlightened the jury on this important subject. On the contrary, they were instructed to disregard the question of contributory negligence if they found that the plaintiff was hurt while engaged in work of an interstate commerce character. If the trial justice meant that it was only in the event that negligence was found because of a violation of the Safety Appliance Act that the question of contributory negligence should be eliminated, this should have

been elucidated. The request of the defendant, above quoted, pointed sharply to the distinction between the two grounds of negligence. The court was emphatic in declining to charge it. I do not think this error was cured by adopting the suggestion of plaintiff's counsel that the court should have supplemented what he had stated " with the assertion that if they find a violation of the Safety Appliance Act." It did not clear up the confused situation. We pointed out in *McAuliffe* v. *New York Central & H. R. R. R. Co.* (172 App. Div. 597, 603) the method of arriving at a verdict for plaintiff in an action under the Federal Employers' Liability Act where contributory negligence was found, namely, by a lessening of the plaintiff's verdict " in the proportion which his contributory fault bears (not to that of the defendant), but to the entire causal negligence, attributable to both." The present case is one peculiarly fitted to the practice of answers to written questions to be propounded to the jury, so that it may be learned on just what ground the verdict is arrived at. If based upon the engineer's negligence then the damages should be duly diminished for such negligence on the part of the plaintiff as contributed to the happening of the accident. If based solely upon a violation of the Safety Appliance Act, an answer accordingly will make for clarity, bearing in mind that contributory negligence in the latter cause would be eliminated.

One other point requires notice: As already indicated in the excerpt made from the charge, the jury were told to determine whether " compensation " was a bar to the action. There was submitted to the jury, upon consent, a proposition whether the plaintiff had " accepted compensation," under the New York Workmen's Compensation Law, " knowing that he was receiving compensation," in which event " he has waived his rights under the Federal Employers' Liability Act, and his acceptance of such payments is a bar to any recovery here." The so-called compensation consisted of three payments made by the defendant to the plaintiff, and aggregating $140. The jury rendered a verdict for plaintiff for $15,000 less this $140 so specifically stated. It was shown by the testimony of the representative of the defendant's claim department that he made these three separate payments to the plaintiff, but that he did it in the course of a general practice to " start paying compensation," " whenever an employee is hurt," irrespective of any application for such compensation upon the part of the employee, and without investigation to determine whether or not the Workmen's Compensation Law applied. The theory of the defendant is that by plaintiff's acceptance of these sums he agreed to abide by the provisions of the Workmen's Compensation Law

and waived his right of action under the Federal statutes. It is settled law that the Workmen's Compensation Law does not displace the Federal Employers' Liability Act. (*New York Central R. R. Co. v. Winfield*, 244 U. S. 147.) Therefore, the defense that the defendant has complied with the State Workmen's Compensation Law and that the employee is limited to that act for his compensation for injuries, cannot be upheld. The State act has no place in such an action as this, and must be ignored as wholly immaterial. Had the defendant proved an agreement by plaintiff to take a specified sum or a sum measured by the terms of the Workmen's Compensation Law and that payments were made accordingly whereby " an accord and satisfaction or a release by a payment in full " (*Holland* v. *Atlantic Stevedoring Co.*, 239 N. Y. 605) was established, the question of a waiver of a right to sue might be in the case. No such defense was pleaded nor proved.

The judgment and order appealed from should be reversed upon the law and the facts, and a new trial granted, with costs to abide the event.

Kelly, P. J., Manning, Young and Lazansky, JJ., concur.

Judgment and order reversed upon the law and the facts, and new trial granted, costs to abide the event.