Harold Tessler, J.
In this malpractice action the jury returned verdicts of $2,500 for the infant plaintiff and $2,500 for loss of services and expenses in the guardian’s individual action. Both at the end of the plaintiffs’ case and at the end of the entire case motions were made by the defendant to dismiss the complaint. After the verdict defendant moved to set aside the entire verdict as against the weight of the evidence or, in the alternative, to set aside the verdict of $2,500 in favor of the father individually as excessive.
In considering the motion to dismiss the complaint at the end of the plaintiffs’ case, the court is constrained to follow the rule as enunciated in Sagorsky v. Malyon (307 N. Y. 584, 586) “ that *498 the facts adduced at the trial are to be considered in the aspect most favorable to plaintiffs and that plaintiffs are entitled to the benefit of every favorable inference which can reasonably be drawn from those facts.” A motion to dismiss at the close of the entire case 11 is substantially equivalent to a motion for a directed verdict made at that point. (Civ. Prac. Act, § 457-a, subd. 3; Fifteenth Annual Report of N. Y. Judicial Council, 1949, pp. 67, 253-256). In such case the test to be applied by the trial court is whether ‘ it would be required to set aside a contrary verdict for legal insufficiency of evidence ’ (Civ. Prac. Act, § 457-a, subd. 1); in other words, whether there has been an actual defect of proof, and hence, as matter of law, the party moved against was not entitled to recover. (Blum v. Fresh Grown Preserve Corp., 292 N. Y. 241, 245.) ” (Weinrib v. Krich, 17 Misc 2d 868, 869.) The case must be submitted to the jury if there is “ any evidence in the record — direct or circumstantial — from which defendant’s negligence may be reasonably inferred ”. (Italics mine.) (Lubelfeld v. City of New York, 4 N Y 2d 455, 460; Verdino v. Hayes, 10 A D 2d 978.)
Viewing the facts and testimony in a light most favorable to the plaintiffs, the court is called upon to determine whether the latter have made out a prima facie case.
The record discloses that the infant plaintiff, a three-year-old boy, fell in his own back yard and sustained an oblique fracture of the left femur. He was taken to the hospital, where he came under the care and treatment of the defendant, on July 21, 1960. On that date defendant placed and set the fractured limb in a spica cast, after which X rays were taken and the infant discharged from the hospital on July 24, with instructions from the defendant to return to the latter’s office for further examination and X rays on August 3. On the latter date the infant was examined by the defendant, X rays taken and the mother was advised that the fracture was healing properly and that the defendant was satisfied with the child’s condition etc.
The testimony discloses that on this occasion the X rays revealed a substantial change of position of the bone, both as to overriding and angulation from that shown on the X rays previously taken in the hospital. The remaining events are not material to the questions now before me and I shall not detail them here except to mention briefly that on August 8 the infant’s mother took bim to her family doctor for some unconnected minor ailment. For some unknown reason, the latter took X rays of the fractured limb and consulted with another orthopedic surgeon and immediately put the child into another hospital, where, on August 9, an open reduction was performed, all of which being *499 without notice of any kind to the defendant. It is conceded that the infant plaintiff has made a good recovery.
Plaintiffs’ contentions regarding the defendant’s negligence fall into two major categories: (1) that defendant’s use of a spica cast was contrary to the accepted medical practice used in the community for the treatment of the type of fracture involved in a three-year-old child and (2) that defendant was guilty of certain acts of omission and commission, which taken individually and/or cumulatively, constituted negligence on Ms part; these acts being (a) his failure to actually compare the first and second X rays and to note the differences in angulation and overriding; (b) his lack of awareness of the changes in the amounts of angulation and overriding that occurred between the July 24 X rays and those of August 3; (c) his failure to properly read and interpret the X rays of August 3; and (d) his failure to take some corrective action because of the above-mentioned changes in angulation and overriding.
A most comprehensive statement of the law relating to malpractice is found in Pike v. Honsinger (155 N. Y. 201, 209-210), pertinent parts of wMch follow: “ A physician and surgeon, by taking charge of a case, impliedly represents that he possesses, and the law places upon him the duty of possessing, that reasonable degree of learning and skill that is ordinarily possessed by physicians and surgeons in the locality where he practices, and which is ordinarily regarded by those conversant with the employment as necessary to qualify him to engage in the business of practicing medicine and surgery. Upon consenting to treat a patient, it becomes his duty to use reasonable care and diligence in the exercise of his skill and the application of his learning to accomplish the purpose for which he was employed. He is under the further obligation to use his best judgment in exercising his skill and applying Ms knowledge. The law holds him liable for an injury to his patient resulting from want of the requisite knowledge and skill, or the omission to exercise reasonable care, or the failure to use his best judgment. * * *
The rule requiring him to use his best judgment does not hold him liable for a mere error of judgment, provided he does what he thinks is best after careful examination. His implied engagement with his patient does not guarantee a good result, but he promises by implication to use the skill and learning of the average physician, to exercise reasonable care and to exert his best judgment in the effort to bring about a good result.” (Italics mine.)
The seeming conflict in the evidence as to whether the use of a spica cast in the case of a three-year-old infant is an accepted *500 medical practice in the community is of little substance. A careful reading of the record compels the conclusion that the defendant’s use of the spica cast in this case was in accordance with the accepted practice in the community. Plaintiffs’ orthopedic surgeon testified that in his opinion such a cast was not the method to be used and that he disagreed with the medical authorities put forth by the defendant. However, the following testimony of plaintiffs’ orthopedist, on cross-examination, is revealing, insofar as it clearly indicates that he, in effect, concedes that defendant’s use of the spica cast was not contrary to accepted practice:
“ Q. I am asking you first of all whether or not you agree with Dr. McLaughlin? [Defendant’s authority.] A. No, sir.
“ Q. All right. Now, secondly, even though you don’t agree with Dr. McLaughlin, will you agree that apparently in 1960, at the time when this hook was published, it was an accepted medical practice in your profession, accepted by some members of your profession at least-A. I have to admit that, yes, sir.
“ Q. To reduce these fractures by the use of a spica cast? A. It doesn’t say to reduce it by the spica cast.
“ Q. Well, to use a spica? A. To use a spica.
“ Q. You will concede that? A. I will concede it.”
I am satisfied that if the jury’s finding of negligence was based upon the single premise that the defendant’s use of the spica cast was contrary to accepted medical practice, thereby constituting negligence, such a finding would have to be set aside as contrary to the credible evidence. However, we are left with the question as to whether or not the jury could have properly and reasonably drawn an inference of negligence from the acts and/or omissions of the defendant listed in the second category heretofore mentioned. In this connection it appears significant to note the defendant’s testimony to the effect (1) that he did not compare the X rays of August 3 taken at the office with those taken at the hospital after the application of the cast, (2) that he was not actually aware of the amount of change (slipping and degrees respectively) that had occurred in the position of the hone as to overriding and angulation, (3) his admission that had he known the amounts of these changes (as revealed by the X rays of August 8, taken by plaintiffs’ doctor, which were substantially the same as to overriding and angulation as those of August 3 taken at defendant’s office) he might have done something to correct it, such as wedging the cast.
Of like significance is the testimony of Dr. Schildhaus, one of defendant’s witnesses, to the effect that “ had Dr. Lavine seen the X-rays of August 8th he may have modified his treatment.” *501 In addition we have the conflicting testimony of plaintiffs’ experts that they considered the position of the infant’s limb, as revealed in the X rays of August 8 (substantially the same as those of August 3) to be unsatisfactory and, as such, required correction.
In the court’s opinion, all of this, as revealed by the testimony, creates such issues of fact as to make it well within the province of the jury to determine as to whether the defendant, by omission or commission, or both, did exercise reasonable care or that he failed to use his best judgment in the reading and interpretation of the X rays and in the treatment or lack of it.
Keeping in mind that the plaintiffs are entitled to the benefit of every reasonable inference (Levine v. City of New York, 309 N. Y. 88, 92), I am satisfied that there were issues of fact that required determination by the jury and, further, that the jury could well have properly concluded that the defendant was negligent and that such a finding is not contrary to the credible evidence nor was there a “ defect of proof ” so as to permit the court to conclude, as a matter of law, that the plaintiffs were not entitled to recover.
Accordingly, the defendant’s motions, with the exception of the one to reduce the father’s verdict as excessive, are denied. As to the latter motion, the verdict of $2,500 in favor of the father for expenses and loss of services must, as a matter of law, be reduced to $2,000 for the reason that a plaintiff may not recover a judgment in an amount greater than that requested in his prayer for relief. In view of the fact that the plaintiff demanded the sum of $2,000 in the complaint, the recovery cannot exceed such sum. (Michalowski v. Ey, 7 N Y 2d 71.)
In addition, the infant’s father in his individual action offered proof of expenses totaling the sum of $1,134. There was some testimony of a vague and indefinite nature by the infant’s mother as to some taxi fares and baby sitter expenses. I cannot conceive that the loss of services, if indeed there be any loss at all in the case of a three-year-old infant — committed by fate to a period of immobility and idleness through no fault of the defendant— could be worth more than a nominal sum. For these reasons, and after due deliberation, I am of the opinion that the verdict of $2,500 in favor of the father is excessive.
Accordingly, the defendant’s motion to set aside the verdict of the father, John H. Farrell, individually, is granted unless the plaintiff agrees to accept the sum of $1,500 in full settlement.